(Decided Feb'y 24th, 1864.)

THE NORTHERN CENTRAL RAILWAY COMPANY vs. THE MAYOR AND CITY COUNCIL OF BALTIMORE.

ACT OF 1853, CH. 191, & THE CHARTER OF THE BALTO. CITY CONSTRUED,—NOT INCONSISTENT: MAYOR & C. C. OF BALTO.—POWERS OF TO REGULATE THE GRADE OF PUBLIC STREETS,—GRANT BY OF RIGHT OF WAY THROUGH ITS STREETS TO BE TAKEN WITH CONDITIONS IMPOSED: LACHES.—By the Act of 1853, ch. 191, the N. C. Rw. Co. was authorized to construct a lateral branch railroad from a point on its main stem to the water line of the north-west branch of the Patapsco River, east of Jones' Falls; and to carry this into effect, was invested with the powers, rights, and privileges, granted in the original charter, and the supplements thereto. The Act contains a proviso, "*That the assent of the Mayor and City Council of Baltimore shall be first had and obtained,* before any part of said branch railroad shall be constructed within the limits of the City." The Mayor and City Council, by an ordinance, gave their assent to the said company's extending its road to tide water as authorized by the Act of 1853. By subsequent sections of the same ordinance various provisions were made prescribing the route through the city to be pursued by the branch railroad, its mode of construction, &c. The *2nd section* authorizes the Railway Company to use locomotive engines on the extension, reserving to the city the right at any time of regulating their speed within the city. The *6th section* provides, that before the Railway Company shall proceed to lay all or any part of the road on any of the streets authorized by the ordinance, the city commissioner shall, by the city surveyor and the engineer of the company, establish the grades of all the streets through which the said road may pass. The *7th section* provides, that the laying of the

track as provided for in the ordinance through any or all the streets named, shall be under the supervision of the Mayor and city commissioner. Held:

1st. That the Act of 1853, and the assent of the Mayor and City Council given in the 1st section of said ordinance, do not give the Railway Company the right to locate its lateral road through the city over such route, and with such grade or grades as the company in the exercise of its discretion might deem expedient.

2nd. By the charter of the city of Baltimore and its supplements, the State has conferred upon the Mayor and City Council full and complete jurisdiction and control over its streets and highways, with power to fix and determine their grades with a view to the public convenience.

3rd. The Act of 1853, ch. 191, did not design to take away from the municipal legislature this jurisdiction and control.

4th. The power reserved by that Act to the Mayor and City Council over the subject, is complete and unimpaired. The right to give or withhold their assent to the construction of the road, necessarily involves the right of prescribing the terms and conditions upon which their assent is given.

5th. The provisions of said ordinance are valid and binding upon the company, as conditions upon which the assent of the city was granted. They must be construed together with the 1st section as parts of the same ordinance; and the company cannot rightfully claim to act upon the assent given by the 1st section, and disregard or repudiate the force of the terms and conditions imposed by the 2nd, 6th and 7th sections.

6th. The fact of this ordinance requiring the railway to be made *under the supervision of the Mayor and city commissioner*, does not bring it in conflict with the rule, *"delegatus non protest delegare."*

7th. The corporation can only act by its agents, and it was not only competent but eminently proper for the Mayor and City Council to designate and appoint the officers and agents to carry out and enforce its provisions.

8th. The failure of the city to invoke the interposition of the court before, will not give the Railway Company the right to continue in the commission of its wrongful acts, unless some official act of the city authorities be shown giving sanction or countenance to the said company's proceedings.

APPEAL from the Circuit Court of Baltimore City:

The appeal in this cause was taken from a *pro forma* order of the Circuit Court for Baltimore city, overruling a motion of the defendant, now appellant, to dissolve an injunction which had been previously granted, enjoining the appellant from constructing, grading or laying with rails,

DECEMBER TERM 1863. 95

Nor. Cent. Railway Co. vs. Mayor & C. C. of Balto.

their branch railroad or way, upon, along or across certain streets in the city of Baltimore, or from altering the grade of any of said streets, or from proceeding with the work of building the said road, except with the consent, and under the supervision of the Mayor of the city of Baltimore, and the city commissioner.

The material facts of the case are thus stated by BARTOL, J. delivering the opinion of this Court:

·"The order of the Circuit Court, overruling the motion to dissolve the injunction in this case, was passed by agreement of counsel *pro forma,* and comes before us on this appeal, unaffected by the weight of a judicial determination in favor of the appellee.

"The decision of the case turns upon the true construction of the Act of 1853, ch. 191, and of the ordinance of the city of Baltimore, approved the 20th day of June 1854.

"By the Act of 1853, ch. 191, the appellant was authorized to construct a lateral branch railroad, from a point on the main stem, to the water line of the north-west branch of the Patapsco River, east of Jones' Falls, and to carry this into effect, was invested with the powers, rights and privileges granted in the original charter and 'the supplements thereto.' The Act contains a proviso, 'that the assent of the Mayor and City Council of Baltimore shall be first had and obtained, before any part of said branch railroad shall be constructed within the limits of the city.' By the ordinance of June 20th, 1854, (No. 55,) the assent of the Mayor and City Council was given to the appellant to extend their road to tide-water, as authorized by the Act of 1853, ch. 191. This is the first section of the ordinance; by subsequent sections of the same ordinance various provisions are made, prescribing the route through the city to be pursued by the branch railroad, its mode of construction, &c. The ordinance contains fourteen sections, of these it is only necessary to notice the second, sixth and seventh. The second authorizes the railroad company to use locomotive engines on the extension, reserving to the city the right, at

96          MARYLAND REPORTS.

Nor. Cent. Railway Co. *vs.* Mayor & C. C. of Balto.

any time, of regulating their speed within the city. The sixth provides, that before the appellant shall proceed to lay all or any part of the road on any of the streets authorized by the ordinance, the city commissioner shall, by the city surveyor and the engineer of the company, establish the grades of all the streets through which the said road may pass. The seventh enacts and ordains, that the laying of the track as provided for in this ordinance, through any or all the streets above named, shall be under the supervision of the Mayor and city commissioner.

"The bill filed by the appellee charges, 'that the appellants have introduced the lateral branch of their road within the limits of the city, and are now and have for some time past, been in the act of grading the same, and laying the rails thereon through the city and along and out the streets thereof, *without the consent of the Mayor and the city commissioner, or under their supervision,* but on the contrary, are proceeding with the construction of said branch or lateral road *against the direction and express commands of the Mayor and city commissioner, and in defiance of the said law and ordinance.'*

"The bill further charges, that the appellants *have altered the grades of several streets which have heretofore been graded and paved,* especially the grades of Lancaster, Harrison and Patuxent streets, and the grades of many of the other streets, whose grades have been established between Belair Avenue and the grounds of the Canton Company in the city of Baltimore; especially the grade of Fayette street, which the appellants in the location and construction of their lateral road, have threatened to raise four feet in height, all which they are now in the act of closing, and threaten to complete the same without the consent of the Mayor and city commissioner, or under their supervision, in contempt of said law and ordinance, and to the great damage and inconvenience of the public, and the irreparable injury of the complainant.

Upon this bill an injunction was issued, to restrain the appellants from proceeding with the work complained of. An answer was filed by the appellants which was excepted to for impertinence and insufficiency. These exceptions were afterwards obviated by striking out the portion excepted to as impertinent, and by an amended answer. This last admits that prior to the filing of the bill, the appellants had altered, as charged, the established grades of Lancaster, Hudson, Harrison, Patuxent, Curley, Potomac, Hull, Canton and Robinson streets, in the city, and had also raised Fayette street about four feet, at or about its intersection with the Havre-de-Grace turnpike.

A motion was made by the defendants to dissolve the injunction before granted, and a *pro forma* order passed by the Court below, (KREBS, J.,) overruling said motion, and continuing the injunction, from which order the defendants appealed.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*J. M. Campbell,* for the appellant:

The first question which arises, is as to the right of the city to an injunction, at the stage of progress in the work of the tide-water extension at which it was asked for.

It was the duty of the city to have intervened as soon as the grade of the lateral road was established, and before any work and expenditure on that grade had commenced. The answer which is responsive on this point, avers that upwards of three hundred thousand dollars had been expended upon the branch road, before the service of the injunction in this cause. But whether this averment be reponsive or not as to the amount of the expenditure, the bill itself shows, that a considerable expenditure must have taken place, from the state of forwardness in construction which it discloses. With a large outlay therefore on the part of the company, the city shows itself to have waited till a

great advance had been made in the actual construction of the lateral road, and until the company had become so committed to the route and grade adopted, as to be incapable of changing them without the sacrifice of every dollar that had been laid out.

The mere adoption of the grade involved no expense, except the compensation of the engineer, who ascertained it. Notice of the establishment of that grade of the branch road was given to the city, by the first excavation or embankment which attempted practically to carry out the grade established, and notice was also thereby given to the city that the established grade interfered with the streets. Then, if ever, and before the company was hopelessly committed to a particular line and grade, should the city have come forward, and its failure to do so, whether construed as laches or acquiescence, disentitles the city to the preventive aid of Chancery, as against a party who is to suffer great loss, if not irremediable injury by such *laches* or acquiescence.

The principle involved in this objection is one of long standing, and well settled in Courts of Equity. A plaintiff who has lain by, and suffered a defendant to expend largely upon an undertaking, before he applies for an injunction to stop it, will be told he comes too late. *Kings Lynn vs. Pemberton*, 1 *Scranton* 252. *Birmingham Canal Co. vs. Lloyd*, 18 *Vesey*, 515. (*Sumner's note, p.* 517.) And the application of this principle to parties dealing with railway companies, is fully established by the following cases cited in the appellant's brief. *Smythe vs. Smythe*, 1 *Swanst.*, 252. 1 *Am. Railway Ca.*, 68 & 256. 2 *Id.*, 210. 2 *Sugden on Powers*, 90.

In the view thus far taken, we have confined ourselves exclusively to the statements of the bill, but the answer is responsive as to the question of notice. It avers, that the city had full and timely notice of the plans adopted for locating, grading and constructing the railway, before the company proceeded to make its large expenditures

on the work, and that it failed to make the objections before such expenditure.

Upon the whole, whether looking at the bill or answer, or both together, it is manifest, that the city has suffered the company to proceed so far without objection as to preclude itself from interference at the present stage of the work.

2. But passing from the point of *laches* or acquiescence, the great question of the case is the power of the city to pass the ordinance, for the violation of which the bill seeks the aid of Chancery by way of prevention. See Acts of 1827, ch. 72, and 1853, ch. 191. "Ordinance to authorize the Balto. & Sus. R. R. to extend their road to Tide-water," passed June 20th, 1854.

The appellant's counsel then reviewed the several sections of the Act of 1853, ch. 191, and argued that the 2nd, 6th and 7th are the only sections which profess to restrain the company's action in regard to crossing or interfering with the grades of streets, and these are the sections specified in the bill as violated or about to be violated. The question is whether the city had a right by way of ordinance to insist on the company's observance of these the 2nd, 6th and 7th sections, as the conditions of its assent to the passage of the lateral road through the city. The inquiry depends altogether upon the language of the Act of 1853, ch. 191. There is no trace of any terms or conditions in the letter of the Act. The city is authorized to express its assent, if it pleases, which necessarily implies that it may withhold such assent. But it is an assent pure and simple, not qualified or conditional, which is allowed by the Legislature. The point before the municipal authorities was only, whether they would allow the construction of the lateral road or not. While the city might have refused its assent to the passage of the lateral road through its limits, yet when it did assent the company came into the city armed with unfettered powers in regard to the lateral road, as it had been in regard to the main stem, to

determine what grades and curves were necessary, and what should be the mode and manner of construction. The first section of the ordinance therefore, is the only one which can be deemed valid.

3. If, however, the city is master of the situation, it is only so by virtue of the Act of 1853, ch. 191, and the validity of its proceedings must depend upon that Act.

Now the power to give or withhold an assent is, by the first section of the Act, conferred *upon the Mayor and City Council of Baltimore.* When, therefore, the city passed the first section of the ordinance, giving permission, that permission emanated from the body named in the Act. But when in the second section and the seventh, the consent of the *Mayor and city commissioner* is required, before the company can cross the streets with the lateral road, it is no longer the assent of the corporation that is demanded, but the consent of certain municipal officers. No authority was given to *them* by the Act of Assembly. *They* are not named in it, and there is nothing to show that they were contemplated. The State Legislature may possibly have considered the local Legislature as a fit depository of the power to arrest or turn aside a great public improvement, but such a discretion can only be exercised by those who are specially entrusted with it. They have no right to pass over to others what is given exclusively to themselves. *Delegatus non potest delegare.*

*Wm. Schley* and *John L. Thoma*, for the appellee, contended that the injunction was righ fully continued, for the following reasons:

1. At the time of the passage of the Act of 1853, ch. 191, the appellant had completed the whole line of railway which it had been authorized to construct. Even if it had acquired by purchase the right of way, the expenditure of its corporate funds in the construction of a branch railway would have been an act *ultra vires.* Hence the necessity of a new grant of power to confer the corporate faculty of ex-

tending its railway beyond the previously established *termini* of its road. *East Anglian Railway Co. vs. Eastern Counties Railway Co.*, 7 *Eng. Law & Eq.*, 508. But so far as the proposed lateral branch railway should be located *within the limits of the City of Baltimore*, the Legislature did not intend to confer any right of *eminent domain*. The language of the Act is clear and unambiguous: "Provided, however, that the assent of the Mayor and City Council of Baltimore shall be first had and obtained before any part of such branch railroad or railroads shall be constructed within the limits of said city."

2. As the city had the right to withhold its assent entirely, it had necessarily the right to assent upon such terms, under such conditions, and with such reservations as a *just regard* for the interests and convenience of the public, in its judgment, required. *Mager vs. Grima, et al.*, 8 *Howard*, 494.

3. The ordinance approved June 20th, 1854, entitled "An ordinance to authorize the Baltimore and Susquehanna Rail Road Company to extend their road to tide-water," gives permission to said Company to extend its road as authorized by said Act of Assembly; but at the same time, and as parcel of said ordinance, prescribes the route and expressly provides, "That no grade of any street already graded and paved shall be altered or interfered with, except under the direction of the Mayor and City Commissioner." And by the 7th section of said ordinance, it is declared, "That it is expressly understood, that the laying of the track, as provided for in this ordinance, through any or all of the streets above named, shall be under the supervision of the Mayor and city commissioner." It is unnecessary to refer to other sections. It is very clear that the city authorities wisely and prudently intended to withhold the power from the Railway Company to interfere with the grades of the streets, without the antecedent approval of its highest municipal functionary, and the assent of its own proper officer specially charged with the care of the

102 MARYLAND REPORTS.

Nor. Cent. Railway Co. *vs.* Mayor & C. C. of Balto.

streets—the city commissioner. In expounding this ordi-
nance, we are not to look at one part disconnected from the
residue; for this would be against the established canon,
that the *intention* is to be regarded, and that the intention
is to be gathered from the *whole instrument.*

4. The bill alleges, and the answer admits, an encroach-
ment on the streets in open violation of the ordinance—in
total disregard of the rights of the appellee as a municipal
corporation—in contempt of the authority of the State,
which expressly saved the rights of the city in the fullest
manner, and thus protected, as it supposed, the rights of
citizens at whose expense the streets had been graded, and
whose improvements had been made with reference to the
established grades. It does seem to be, on the part of the
appellant, a most extraordinary pretension, that it has
right and law on its side.

5. The alleged acquiescence, &c., of the city authorities,
are of no avail. The *will* of the city is only to be mani-
fested by its *corporate* acts. *Mayor, &c. vs. Eshbach,* 18
*Md.,* 282, 283. And even if it were a case where estoppel ·
could be invoked upon final hearing upon proof of sufficient
facts, yet there is a broad distinction between debarring a
party from asserting a right actually existing, and creating
a right *de novo* in behalf of a party whose right is depen-
dent on the performance of a *condition precedent,* and who
admits, by the very objection, its non-performance. The
same remarks apply to the notion of an acquired right to
commit further public nuisances in the streets of Baltimore,
on the plea of merit, in having expended a large sum of
money in the commission of like nuisances to some extent
already.

*Thos. Alexander,* for the appellant in reply, argued for
the dissolution of the injunction:

1. Because the Act of 1853, gave no power to the city
except simply to give or refuse its assent, and invested it
with no authority to assent upon conditions. If, therefore,

any of the sections from the second to the last can be construed as conditions, (which may be doubted as to all but the 8th and 12th,) they are unauthorized by the Act and void. Such conditions as are imposed by the 2nd, 6th and 7th sections, are in fact repugnant to the provisions of the Act of 1853, ch. 191, and also the Act of 1853, ch. 252. 1 *Am. Railway Ca.*, 224.

2. Because even if the Act of 1853, ch. 191, allows the Municipal Council to exercise a discretion as to the terms on which a great State improvement shall pass through the city, that discretion cannot be transferred as the 2nd section attempts, to the Mayor and city commissioner.

3. The city's *laches* in allowing the appellant to go on without objection in working at great expense upon the grade adopted by it, is a bar to the Court's interference by an injunction. 1 *Railway Ca.*, 68, 256. 2 *Id.*, 210. *Can. Co., vs. Lloyd*, 18 *Ves.*, 515. *Smythe vs. Smythe*, 1 *Swanst.*, 252.

4. And generally upon the subject of powers of municipal corporations, he referred to 2 *Sug. on Pow.*, 90.

BARTOL, J., after stating the facts of the case, *ante p.* 95, delivered the opinion of this Court as follows :

The appellant contends, that under the Act of 1853, and the assent of the Mayor and City Council, given in the first section of the ordinance, it has the right "to locate the lateral road through the city over such route, and with such grade or grades as the company, in the exercise of its discretion, might deem expedient."

Upon this question this Court is of opinion the appellant is in error. By the charter of the city of Baltimore and its supplements, the State has conferred upon the Mayor and City Council full and complete jurisdiction and control over the streets and highways, with power to fix and determine their grades, with a view to the public convenience. The Act of 1853 did not design to take away, from the municipal Legislature, this jurisdiction and con-

104 MARYLAND REPORTS.

Nor. Cent. Railway Co. *vs.* Mayor & C. C. of Balto.

trol, so essential to the welfare of its citizens and the public. On the contrary, while conferring upon the appellant the right to construct its railway over the streets of the city, the General Assembly has declared, as a condition precedent, that "the assent of the Mayor and City Council shall be first had and obtained;" thus referring the subject to the action of the city authorities, who have the power to grant or to refuse their assent to the proposed work. Nothing can be clearer than in such a case, the power reserved by the Act to the Mayor and City Council over the subject, is complete and unimpaired, and necessarily involves the right of prescribing the terms and conditions upon which their assent is given.

The decision of the Supreme Court of the United States, in *Mager vs. Grima & others*, 8 *Howard*, 490, is an authority for the principle just stated. That was a case involving the constitutional power of Louisiana to impose a tax upon legacies, when the legatee is neither a citizen of the United States, nor domiciled in that State. On page 494, Chief Justice Taney says: "If a State may deny the privilege altogether, it follows, that when it grants it, it may annex to the grant any conditions which it supposes to be required by its interests or policy." We conclude, therefore, that the provisions of the ordinance to which we have referred, are valid and binding upon the appellant, as conditions upon which the assent of the city was granted; they must be construed together with the first section, as parts of the same ordinance, and the appellant cannot rightfully claim to act upon the assent given by the first section, and disregard or repudiate the force of the terms and conditions imposed by the ordinance. We speak particularly in this connection of the terms imposed by the *second, sixth* and *seventh* sections, they are all that are involved in this case, and it is unnecessary to consider the provisions of the other sections.

We do not think there is any force in the objection, that by the ordinance the railway is required to be made under

the supervision of the Mayor and city commissioner. The rule "*delegatus non potest delegare,*" does not apply. The corporation can act only by its officers and agents, and it was not only competent, but eminently proper for the Mayor and City Council by ordinance, to designate and appoint the officers or agents to carry out and enforce its provisions.

It has been contended by the appellant, that the city has lost its equitable right to the relief prayed, by *laches,* and acquiescence in the acts complained of.

The facts disclosed by the record before us, do not show any such *laches,* or acquiescence in the wrongs complained of, on the part of the Mayor and City Council, as to estop the corporation in a Court of Equity. We have decided in the case of *The State vs. The Phil. Wil. & Balto. R. R. Co.,* 20 *Md. Rep.,* 157, that no lapse of time can legalize a public nuisance, or justify a wrong doer in continuing it.

Besides, in a case like this the ordinary rule of equitable estoppel governing individuals, does not apply. Here the appellant is dealing with a public municipal corporation, whose acts are manifested only by its public ordinances, officers and agents. The provisions of the ordinance were well known to the appellant; upon the assent of the city expressed in the ordinance, it professes to act, and yet it has by its own admission, disregarded its plain provisions. No official act of the city authorities has been shown giving sanction or countenance to the appellant's proceedings; but the claim is now advanced that it has acquired the right of continuing in the commission of its wrongful acts, because the complainant did not sooner invoke the interposition of the Court. This defence is not supported by any principle of equity applicable to the case as it is presented by the record.

A decree will be signed affirming the order of the Circuit Court, continuing the injunction.

*Order affirmed.*

(Decided Feby. 24th, 1864.)