THOMAS F. MULLAN ET AL. *v.* HARRY HOCHMAN
ET AL.

[No. 54, January Term, 1929.]

214

*Decided April 3rd, 1929.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*J. Morfit Mullen,* with whom was *Alfred J. O'Ferrall* on the brief, for the appellants.

*Daniel Ellison* and *Avrum K. Rifman,* for the appellees.

DIGGES, J., delivered the opinion of the Court.

The question presented by this record is whether or not that portion of a street in Baltimore City variously designated as Ellicott Street, Poole's Lane, and Thirty-seventh Street, which lies between Cairnes Lane and Falls Turnpike Road, has been dedicated to the full width of sixty feet, so as to require the opening of said street to the full width of sixty feet, thereby necessitating the removal of buildings

located on the northern thirty feet thereof, which northern 30-foot portion has been built upon, enclosed and occupied by the appellee and his predecessors in title for forty-five or fifty years prior to the institution of these proceedings. This street, which we will hereafter call Ellicott Street, runs approximately east and west. The land on the south side of this street, extending from Falls Turnpike Road (hereafter called Falls Road) to Cairnes Lane, is the property of Charles E. Litzinger and wife and was acquired by *mesne* conveyances from Henry Mankin, who in 1855 conveyed all of his property to trustees for the benefit of his creditors. The various deeds by which Litzinger acquired title describe his property as binding on Ellicott Street, and show that it binds on the west side of Falls Road, the east side of Cairnes Lane, and south side of Ellicott Street. On the north side of Ellicott Street, between Falls Road and Cairnes Lane, it appears that there is a lot fifty feet wide, which did not belong to Henry Mankin at the time he conveyed his property to the trustees. In 1857 the trustees conveyed to the widow and children of Nathaniel Parsons a lot fronting on Falls Road, but not bordering on Ellicott Street, the beginning point in this description being, "in the center of the Falls Turnpike Road, as laid out sixty feet wide, fifty feet northerly from a line drawn north 79 degrees east along the north side of Ellicott Street and also sixty feet wide." About nine years later, in 1866, Isaac Crowther, Sr., administrator *d. b. n. c. t. a.* of Nathaniel Parsons, deceased, conveyed to Beunain Forsyth a lot of land described in part as follows: "Beginning for the same at a point in the center of the Falls Turnpike Road as laid out sixty feet wide, being the northeast corner of the whole lot of ground of which the piece now being described forms a part and it also being the beginning of the said whole lot, piece or parcel of ground and running thence along the center of an avenue or street sixty feet wide; to be lain out when required in a legal manner by the property owners along the route of such proposed street or avenue." The description in the deed dated June 23, 1919, by which the

appellee acquired title, is: "Beginning for the same at a point in the center of the Falls Turnpike Road as laid out 60 feet wide and the intersection of the center of an avenue or street 60 feet wide to be laid out when required in a legal manner by the property owners along the route of such proposed street or avenue; and running thence westerly and binding on the center of said avenue, 190 feet to the center of an alley to be laid out 20 feet wide, thence binding along the center of said alley parallel to the Falls Turnpike Road 90 feet; thence easterly, 190 feet parallel to the center of said avenue to be laid out as aforesaid to the center of the Falls Turnpike Road; and thence binding on the center of the Falls Turnpike Road to the place of beginning." The last description is contained in the three deeds which intervened between the deed from Crowther, administrator, and the deed to the appellee.

It will be noted that the appellee obtained by his deed, of the land conveyed by Crowther, administrator, to Forsyth, only a 10-foot strip on the north side of his lot running from Falls Road to Cairnes Lane. Therefore it appears that at the present time the appellee owns a lot fronting 90 feet on the center of Falls Road, and of that width running to the center of Cairnes Lane. This 90-foot frontage is made up, first, of 30 feet of what is claimed to be Ellicott Street; second, 50 feet being the lot which was disposed of before the deed from Mankin to the trustees; and 10 feet of the land embraced in the deed from the trustees to Parsons. There is no record title of this 50-foot lot prior to the deed from Crowther, administrator, to Forsyth; and all that this record discloses in reference thereto is that it was not owned by Mankin at the time of his conveyance to the trustees. However, it having been conveyed to Forsyth by the administrator *d. b. n. c. t. a.* of Nathaniel Parsons, there is a reasonable presumption that Nathaniel Parsons was the owner thereof at the time of his death, and became so before Mankin conveyed his property to the trustees. At the time of the conveyance from Mankin to the trustees this property was located in Baltimore County, and upon an examination of

the records there it was found that there had been filed for record in 1909 a lithograph plat showing a subdivision of Henry Mankin's property, upon which there are delineated certain streets and alleys, among which is Ellicott Street, 60 feet. This plat on its face is designated as "Plat No. 1" and states: "Map of Hampden property belonging to Henry Mankin. The lots are measured to the middle of the streets. Scale 200' in an inch. 1856. Wm. Dawson, surveyor. Lith. by A. Holm & Co., Balto." There is nothing in the record to show by whom or why this plat was recorded in 1909, but because of its appearance and date, and upon the suggestion of the clerk that it must have been filed in an old equity proceeding, counsel for the appellant examined the equity records and found an equity case instituted about 1856, entitled *Esbach v. Talbot and Taggart, trustees.* Upon an examination of these proceedings it was found that the trustees' reports showed that lots had been sold with reference to "Henry Mankin's Plat No. 1." These lots were designated by numbers but not described by metes and bounds, and upon a comparison with the plat the numbers indicating the lots sold were found to correspond with similar numbers on the plat. All of the conveyances made by the trustees which are embraced in the record, with the exception of Litsinger's, described the property conveyed as running to the center of the streets, and the plat states, "the lots are measured to the middle of the streets." The Mankin plat shows several streets running east and west through the subdivision and ending in Falls Road on the east.

The record discloses that the Poole family, from whom the appellant acquired his title, at one time owned about twenty-eight acres of contiguous land, the title to which came down from Mankin, and which was occupied by them as a country estate, the streets and alleys as shown on the Mankin plat never having been laid out or opened on the ground. This Poole property was located west of Cairnes Lane and embraced the entire bed of Ellicott Street as shown on the plat lying west of Cairnes Lane. For more than 45 years there had been a street or roadway over the south 30 feet

of Ellicott Street between Falls Road and Cairnes Lane, but, as stated, the north 30 feet of said street between those points for the same length of time had been enclosed, occupied, and built upon by the appellee and his predecessors in title. In 1927, at the time the appellant purchased the Poole property, that property was and had been for a number of years occupied as a country estate, with a large dwelling house thereon and numerous outbuildings, the land being entirely enclosed by a fence and divided into fields for pasturage, etc. At that time there was a 30-foot roadway over the south side of Ellicott Street, extending from Falls Road to a gate in the Poole fence either on the west side of or in Cairnes Lane, about 170 feet from the west side of Falls Road. Upon passing through the gate the roadway continued to the Poole dwelling house. There were no streets, alleys, or roads within the enclosure of Poole's property, corresponding in any way with those laid down on Mankin's plat, with the exception of this driveway from the gate mentioned to the dwelling house, which was upon what would have been Ellicott Street if laid out; so that the physical appearance in respect to the entrance to the Poole property over Ellicott Street, at the time the appellant bought it, was that of an unimproved 30-foot roadway leading from Falls Road to the gate, and on to the dwelling house. This roadway was 30 feet wide, about 15 feet of which was a cinder drive; on the north side of this 30-foot strip was a hedge which bounded the appellee's property, and on the south side was the property of Litsinger. It is further shown by plats, unofficial, but made for tax and assessment purposes by the city, that this roadway was designated as a "private road."

After the appellant purchased from Poole, he removed the fence and gate, subdivided his property, and built a number of houses thereon. On that part of Ellicott Street which lies west of Cairnes Lane the appellant opened to the width of 60 feet, and immediately west of Cairnes Lane and on the north side of Ellicott Street as thus opened by him he erected 18 houses. The situation then existing was that that portion of Ellicott Street lying within the appellant's property was

60 feet wide, while from Cairnes Lane to Falls Road it was 30 feet wide. The object of the bill filed by the appellant is to compel the widening of Ellicott Street between Cairnes Lane and Falls Road to 60 feet, and the removal of the appellee's buildings and hedges. A photograph filed as an exhibit in the case shows Ellicott Street between Cairnes Lane and Falls Road, 30 feet; also shows a tall hedge enclosing the appellee's property, the buildings thereon, and a concrete sidewalk along the west side of Falls Road in front of the appellee's property and extending over the 30 feet now claimed by the appellant to be a portion of Ellicott Street. In addition to the open, notorious and uninterrupted actual possession and enclosure of the property, the record further discloses that the appellee and those under whom he claims have paid taxes on the property now enclosed and occupied by him to Baltimore City since 1888, at which time this section was annexed to the city.

There is also in the record what is called a deed, dated December 6th, 1911, signed by a number of people, among whom are some of the immediate predecessors in title of the appellant, wherein it is recited that the grantors desire and have requested that the city shall construct and maintain, in the beds of Ellicott Street (formerly called Poole's Lane) from Falls Road to Cairnes Lane, and Cairnes Lane from 36th Street to Ellicott Street (formerly called Poole's Lane), water mains or supply pipes for the usual purposes for which such pipes are constructed and maintained, and the city is willing to comply with the said request upon the execution and delivery of said deed. It then grants and conveys to the city the right and privilege of constructing, laying and maintaining water mains or supply pipes in the said beds of the above mentioned streets; and provides that the said Mayor and City Council of Baltimore shall have all the rights and privileges in the aforesaid beds of the above named streets which it would have if it were the owner thereof in fee simple; "it being understood, nevertheless, that neither the execution hereof nor anything herein contained shall be regarded as a dedication of the beds of the aforesaid streets

to public use, except for the purposes hereinbefore set forth, nor shall the delivery of this deed and the acceptance thereof be regarded as the acceptance of any dedication of the beds of said streets heretofore made, except for the purposes herein set forth, it being the intention of the parties hereto that, except in so far as necessarily altered for the purposes herein expressly provided for, the rights of all persons and corporations in the beds of said streets shall after the delivery hereof continue the same as though this instrument had never been executed." This instrument was also signed by the appellee.

Subsequent to the appellant's acquisition of his property, application was made by him to the Bureau of Highways of Baltimore City, setting forth that he is the owner of at least 70 per cent. of the front feet of ground binding on 37th Street (Ellicott Street) from Falls Road to Sycamore Street, and asking that the same be graded, curbed and paved under the authority of a certain ordinance set forth in the application. This application was referred to the legal department of the city, and the city solicitor reported that it could not be granted until title to the land covered by the application was acquired by the city, it being his opinion that it was then a private road. We refer to this for the purpose of showing the city's attitude in respect to the title to this property, and negativing any acceptance of an alleged dedication. There is no dispute as to the material facts, and the solution of the question presented depends upon the legal consequences flowing from these facts.

In our view of the case, in order to entitle the appellant to obtain the relief sought, it is essential for him to show that there had been a dedication and acceptance thereof by the city. The rule is firmly established in this state, and supported by the overwhelming weight of authority elsewhere, that when a person subdivides property in a city and lays down on a plat thereof, made or adopted by him, lots shown as bordering streets and alleys delineated upon the plat, and then sells any of the lots with reference to the plat, he thereby dedicates the streets upon which the sold lots bind to the public. The theory of this rule is that there is an implied

covenant on the part of the grantor in favor of the grantee of the lot so sold, to the use of the street upon which the lot is described as binding. In other words, by such act there passes from the grantor to the grantee an implied easement of way over the streets contiguous to the property sold. *White v. Flannigain,* 1 Md. 525; *Moale v. Baltimore,* 5 Md. 314; *Hawley v. Baltimore,* 33 Md. 270; *Baltimore v. Frick,* 82 Md. 79; *Beale v. Takoma Park,* 130 Md. 297; 19 *C. J.* 928, sec. 127.

It is also settled that this implied covenant of a right of way is limited to that portion of an unopened street over which it would be necessary for the grantee to pass to a public highway; it does not extend beyond such point. The rule is clearly and forcibly stated by this court, speaking through Judge Brent, in *Hawley v. Baltimore, supra,* where it is said: "The law is now too well settled to admit of any doubt that if the owner of a piece of land lays it out in lots and streets, and sells lots calling to bind on such streets, he thereby dedicates the streets so laid out to public use. This rule is founded upon the doctrine of implied covenants, and the dedication will be held to be co-extensive with the right of way acquired as an easement by the purchaser. It is upon the implied covenant in the grant to him that the dedication to public use rests, and such dedication must necessarily be measured by the limits of the right he has acquired by virtue of his grant. In the case before us, the right of way or easement of Mosher Street acquired by the purchasers of the lots mentioned in the proof is the precise limit of the dedication by Hiss. * * * The doctrine of implied covenants will not be held to create a right of way over all of the lands of a vendor which may lie, however remote, in the bed of a street. The lands must be contiguous to the lot sold, and there must be some point of limitation. The true doctrine is, as we understand it, that the purchaser of a lot calling to bind on a street, not yet opened by the public authorities, is entitled to a right of way over it, if it is of the lands of his vendor, to its full extent and dimensions only until it reaches some other street or public way. To this extent will

the vendor be held by the implied covenant of his deed and no further." In *Baltimore City v. North. Cent. Ry. Co.*, 88 Md. 427, it was held: "The whole doctrine of dedication to use as a public highway as developed in the decisions of this state rests upon implied covenant to an easement in the highway, and there can be no presumption of dedication where this foundation is wanting. The essential elements or conditions of such a dedication are as follows: 1st, a street designated on a plat made or adopted by the party himself as passing over his lands; 2nd, a subsequent conveyance by him of lots binding on such street; and, 3rd, the retention at the time of the conveyance by the owner of the fee in the bed of the street. We have found no case of dedication of a streets in our reports where any one of these elements is absent, and we believe none can be found, because, in the language of the appellees' brief, the grant of any part of the street lying alongside of the lot conveyed 'is destructive of the foundation on which, under the decisions of this court, rests the inference of an intent to dedicate a street from the grant of land not embraced within the lines of the street.' " See *Bloede v. Baltimore*, 115 Md. 594.

The basis for any claim of a dedication of Ellicott Street between Cairnes Lane and Falls Road to the extent of 60 feet in width, must depend upon the plat used by the trustees in connection with the equity suit in Baltimore County. It is evident from the date of the plat (1856) that it was made after the conveyance from Mankin to the trustees, which deed was dated December 1st, 1855; therefore any dedication by reason of this plat must have occurred after the trustees acquired title. In all instances of conveyance by the trustees of lots shown on the plat, the description in each of the deeds thereto goes to the center of the streets, carrying the fee simple title to that point, with the single exception of the Litzinger lot, which is described as binding on Ellicott Street. Under the authority of *Baltimore City v. North. Cent. Ry. Co., supra,* there could be no dedication where the conveyance is to the center of the street, because, as there stated, "the grant of any part of the street lying

alongside of the lot conveyed is destructive of the foundation on which rests the inference of an intent to dedicate a street from the grant of land not embraced within the lines of the street." Therefore it is clear that this plat, designated "Mankin Plat No. 1," and the sales of lots in reference thereto, could not constitute a dedication of any of the streets and alleys laid down on that plat, with the possible exception of the Litzinger lot.

Let us now consider whether or not the facts and circumstances surrounding the sale and conveyance of that lot, as shown by the various exhibits and testimony in connection therewith, constitute a dedication of Ellicott Street from Cairnes Lane to Falls Road for the width of 60 feet. From such consideration it appears to be clear that the lots which are shown as shaded on the map were sold before and were not embraced by the conveyance from Mankin to the trustees; that the Litzinger lot was so shaded; that the 50-foot lot now belonging to Litzinger, bordering on Ellicott Street, was sold by Mankin to Nancy Ellen Armstrong, wife of John Armstrong, before his conveyance to the trustees, although the deed to her was not given until 1864; that Mankin conveyed to John Armstrong, on November 27th, 1855 (four days before the conveyance to the trustees), a lot of 50 foot frontage on Falls Road adjoining the Ellen Armstrong lot on the south; that although Mankin was the owner of the Ellen Armstrong lot at the time it was sold to her, he did not give a deed for it until after his deed to the trustees; that the reason Mankin gave the deed, instead of the trustees, was because this lot had been sold before the trustees took title; that subsequently John J. Kelly, one of the owners in the chain of title from Ellen Armstrong, secured a confirmatory deed for that lot from the trustees, thereby perfecting the record title; that in 1864, when the deed was made by Mankin to Ellen Armstrong, the plat was in existence which showed Ellicott Street, and therefore at the time of the actual conveyance it was described as binding on Ellicott Street, but that he did not at that time own the bed of Ellicott Street. There is no direct evidence

on the point, but it seems highly improbable that the proceedings of the trustees for the benefit of creditors would not have been completed long before the date of the confirmatory deed, that date being twenty-four years after the transfer to them, during which interval one of the trustees had died.

The above appearing to us to be true, it follows that, at the time Mankin sold the lot to Ellen Armstrong, he could not have dedicated Ellicott Street, as shown on the plat, because the plat was not then in existence; and, if he undertook to dedicate Ellicott Street at the date of his deed to Ellen Armstrong, it could not be done, because he then was not the owner of the bed of the street; and further, that the trustees, by their confirmatory deed, could not have dedicated the street, for the reason that the easement which flowed to Ellen Armstrong by reason of the sale to her attached at the time of the actual sale to her by Mankin, and not at the time of the confirmatory deed by the surviving trustee. Admitting, for the sake of the argument only, that at the time the lot was actually sold to Ellen Armstrong there could be an implied covenant of an easement to a right of way along the north side of her lot, which now constitutes Ellicott Street, it could not be held that such easement was to a street 60 feet wide, because the 60-foot width was first contained in the plat; and the whole record negatives the idea of any easement to the extent of 60 feet, as it is conclusively shown that the greatest width that has ever been used over the bed of what is claimed to be Ellicott Street was 30 feet.

We therefore have the appellee occupying the north 30-foot side of Ellicott Street for forty-five or fifty years, enclosed, and the holding has been open and notorious, exclusive and uninterrupted, under claim of right first contained in the deed from Crowther, administrator, to Forsyth. Does this constitute a good title by adverse possession? We think it does. Objection is made that any taking up of the public street or obstructing the same is a nuisance and cannot be made the basis of a holding which would ripen into a title by adverse possession. This position is sound if

Ellicott Street to the width of 60 feet is a public highway. As we have shown, there was no dedication of this street by the Mankin plat; and, even if it be admitted that there was an easement created (which we do not think there was), it still would not be a public highway unless and until the right of way brought into being by the implied covenant or by dedication was accepted by the city or some governmental agency acting with authority for the public. In no other manner could it be converted into a public highway so as to compel the maintenance and repair thereof by the public authorities, or make the city respond in damages for injuries occasioned by the failure to keep in repair. This must be true; otherwise all that would be necessary to require the city to maintain and repair streets would be for the owner of land to lay it off in lots and blocks, with intersecting streets and alleys, and sell one or more lots binding thereon. In *Baltimore v. Canton Co.,* 124 Md. 620, it was said: "It may be conceded, under the facts of this case, that the land in controversy was dedicated as and for a public street by reason of the description contained in the map and deed from the Canton Company to Alfred Munson dated May 1st, 1846, as contended for by the appellant, but this alone would not constitute it a public highway. In the recent case of *Whittington v. Commrs. of Crisfield,* 121 Md. 392, this court said, following the rule established by a long line of decisions upon this subject, that a dedication of a public street to public use by the plats and deeds does not make the street a public highway. Such a deed does not become final and irrevocable until there has been an acceptance of it on the part of the public authorities. *McCormick v. Baltimore,* 45 Md. 524; *Kennedy v. Cumberland,* 65 Md. 514; *Valentine v. City of Hagerstown,* 86 Md. 488." The evidence in this case fails to disclose any such acceptance by the municipality of the land in question as the law requires, but on the contrary, affirmatively establishes that there never has been such an acceptance. Ellicott Street, therefore, never was, nor is it now, a public highway; and the encroachment upon

what is claimed to be 30 feet of that street by the appellee is not an obstruction or a taking up of part of a public highway.

In *McCormick v. Baltimore, supra,* Judge Alvey, after stating the principles of the law of dedication, said: "And in the case of a clear act of dedication, as for a street, it is not essential to the validity of such act, that the space thus dedicated should, at once, be used by the public for that purpose, or that it should be so used within any limited time, in the absence of any condition to that effect. *Barclay v. Howell,* 6 Pet. 504-5; *Washb. on Eas.,* 195. Whether there has been an acceptance of the dedication on the part of the public, or such long adverse user as to give rise to the presumption that the public have abandoned the right, are different questions, and which do not arise in this case." In *Baldwin v. Trimble,* 85 Md. 402, Judge McSherry, speaking for the court, said: "Whilst an *encroachment* on a highway is conclusively settled in Maryland to be a public nuisance which can never grow by prescription into a private right (*P. W. & B. R. R. Co. v. State,* 20 Md. 157; *N. C. Ry. Co. v. Mayor, etc., Balto.,* 21 Md. 93; *Ulman v. Chas. St. Av. Co.,* 83 Md. 130), yet it may be true and in perfect harmony and accord with that doctrine, that cases, concerning public streets can arise of such a character and founded upon an actual and notorious *abandonment* of the highway by the public, that justice requires that *equitable estoppel* shall be asserted even against the public in favor of individuals. In that event, such cases, as observed by Judge Dillon, 'will form a law unto themselves,' and will 'not fall within the legal operation of limitation enactments. * * * There is no danger,' he continues, 'in recognizing the principle of an *estoppel in pais* as applicable to such cases, as this leaves the court to decide the question, not by the mere lapse of time, but by all the circumstances of the case, to hold the public estopped or not, as right and justice may require.' 2 *Dillon, Mun. Corp.* (2nd Ed.), Sec. 433. And this proposition is supported by *Goodrich v. Milwaukee,* 24 Wis. 422; *Lane v. Kennedy,* 13 Oh. St. 42; *Com. v. Miltenberger,* 7

Watts 450; *Logan County Suprs. v. Lincoln,* 81 Ill. 156; *Platt Co. v. Goodell,* 97 Ill. 84; *Simplot v. Chicago, M. & St. P. R. R. Co.,* 16 Fed. Rep. 350; and whilst not decided is implied in *M. & C. C. of Baltimore v. Frick,* 82 Md. 86."

What was here said in reference to a public highway is applicable with greater force to an unopened street which is dedicated but not accepted, and therefore not a public highway; and applies to the full extent to a portion of an unopened right of way which has been acquired through an implied covenant running to the grantee of a lot, where that unopened portion has been enclosed and occupied under a claim of right for the statutory period. In other words, if there ever was an implied easement, attached to the Litzinger lot, to Ellicott Street over the full width of 60 feet, and no portion of the northern 30 feet thereof was ever opened or used as a way, but for 50 years the owners of the Litzinger lot have stood quietly by and suffered the appellee and his predecessors in title to enclose, use, occupy and claim as his own the northern 30 feet, to improve same by buildings and otherwise, it is too late to assert his easement over such enclosed portion. Our conclusion is that, even if it is admitted that the owners of the Litzinger lot had an easement covering the full 60 feet, such easement in the northern 30 feet thereof has been extinguished.

It is to be noted that Litzinger is not a party to these proceedings, and whatever easement attached to his lot could only be enforced by him and not by the appellant, for the reason that it is settled that such an implied easement could only be invoked for his benefit, and only extends to the nearest public highway.

Finally, it is argued that the language "beginning for the same at a point in the center of the Falls Turnpike Road as laid out 60 feet wide and the intersection of the center of an avenue or street 60 feet wide to be laid out when required in a legal manner by the property owners along the route of such proposed street or avenue," contained in the deed to the appellee and his predecessors in title since the deed from Crowther, administrator, to Forsyth, prevents the appellee

from acquiring a title by adverse possession. The answer is that the deeds conveyed him the fee simple title to the center of the street spoken of as "avenue" in the above quotation, and that language is so ambiguous as to render it incapable of enforcement. To illustrate: Does it mean the property owners along the proposed Ellicott Street or any portion thereof, or is it confined to the owners on said proposed street between Cairnes Lane and Falls Road? Does it mean that the property owners at any particular time, or the property owners for all time to come, may require it to be laid out? Does "in a legal manner" mean that the property owners are entitled to have it laid out at the appellee's expense, at the applicant's expense, or the city's expense? Does it mean that the appellee must be paid for the value of the land and improvements thereon, or does it mean that it may be laid out without any recompense to the appellee? Almost any one of these suggestions would be as logical as the other, and illustrates the well-nigh impossibility of reaching the true intent and purpose of the language. We are clearly of the opinion that it cannot be given the effect of taking the land and improvements, which the appellee has held in the manner and for the time disclosed by this record, for the benefit of the appellant or other person or corporation, without adequate compensation being paid to the appellee.

The conclusion reached by the learned chancellor was that the bill should be dismissed. We are in accord with such conclusion, and will affirm the decree.

*Decree affirmed, with costs to the appellee.*