742 A.2d 946

**Robert E. KOCH et al.**

v.

**Richard D. STRATHMEYER et al.**

**No. 126, Sept. Term, 1997.**

Court of Appeals of Maryland.

Dec. 21, 1999.

Frederick C. Sussman (Council, Baradel, Kosmerl & Nolan, P.A., on brief), Annapolis, for Petitioners.

Thomas J. Kennedy, Baltimore, for Respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

ELDRIDGE, Judge.

We granted a petition for writ of certiorari in this case to decide whether two interior lot owners enjoy an implied easement over a 16 foot road which bisects the property of two waterfront lot owners.

## I.

In the Anne Arundel County waterfront subdivision formerly known as "Lerch's Point," there are four lots. On the west side of the subdivision, there are two waterfront lots owned by

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion

the petitioners (Mr. and Mrs. Koch and Mr. Brewer). Behind the petitioners' waterfront lots, on the east side of the community, there are two interior lots owned by the respondents (Mr. and Mrs. Strathmeyer and Mr. and Mrs. Hantske). A road, sixteen feet in width, runs between the Strathmeyer and Hantske lots on the east side of the community and continues between the Koch and Brewer lots leading west all the way to the water. The respondents, owners of the interior lots, claim that they have an easement over that road, between the two waterfront lots, so that they can access the water. The petitioners assert that the interior lot owners' easement does not extend west to the water, but that it is limited to ingress and egress from the interior lots to the public road on the east side of the community.

The land that became this waterfront subdivision originally belonged to George Hazard. Hazard created the subdivision which he called "Lerch's Point" by having a plat of the property prepared in 1940. Although this plat was never recorded, Hazard began conveying away the land piecemeal according to the unrecorded plat. Hazard's original subdivision consisted of seven lots. Over time, those seven lots have been consolidated into the four lots presently owned by the parties in this case. The present-day waterfront lots, owned by the Koches and Mr. Brewer, were originally conveyed as four lots. The two lots directly abutting the water were conveyed first in 1940, and the two directly behind them were conveyed in 1941. The present-day interior lots, owned by the Strathmeyers and the Hantskes, were originally conveyed as three lots: two in 1948 and one in 1950.

All four of the original deeds conveying the land which became the waterfront Koch and Brewer properties describe the lots in metes and bounds using the "16 foot road" as a boundary. From reading all four of the deeds, it is clear from the metes and bounds descriptions that the road runs between the present-day Koch and Brewer lots, leading from the shore of Lerch's Creek (formerly Gales Creek) on the west to the remainder of the property retained by Hazard on the east.

All of the deeds refer to "the unrecorded plat of Lerch's Point."

Today, the Koch and Brewer properties (the waterfront lots) are bisected by the 16 foot road, covered in gravel, up to a point 85 feet from Lerch's Creek. The shoreline in front of both properties is bulkheaded. From the bulkhead up to the gravel portion, the "road" is covered in grass, with the Koch and Brewer properties visibly blending into one another.

Behind the Koch and Brewer lots, on the interior of the community, the 16 foot road then bisects what are now the two interior lots, owned by the Strathmeyers and the Hantskes. The Strathmeyers' lot, which is directly behind the Koches' lot, was originally conveyed as two lots by a single deed in 1948. This deed also uses the 16 foot road as a boundary in the metes and bounds description, separating the present-day Strathmeyer lot on the north from the present-day Hantske lot on the south. Finally, this deed also refers to "the unrecorded plat of Lerch's Point."

After conveying away the land that became the Strathmeyer lot, Hazard conveyed his remaining interest in the property in 1950. This remainder, the present-day Hantske lot, is located directly behind Mr. Brewer's lot and directly across from the Strathmeyers' lot. Although this deed does not reference the unrecorded plat, it uses the 16 foot road as a boundary separating the present-day Hantske lot from the present-day Strathmeyer lot. The wording of the deed is unique in that it describes the road as "a 16 foot right of way (with use in common)." Finally, it is clear from the language of this deed that the 16 foot road ends on the east edge of the Strathmeyer and Hantske properties, where it intersects with a 20 foot-wide road. The 20 foot road runs north and south along the east edge of the community and leads to the "County Road" (presently named Church Lane).

The Strathmeyers and Hantskes filed a two count complaint in the Circuit Court for Anne Arundel County against the Koches and Mr. Brewer. Count I sought a declaratory judgment that the plaintiffs enjoyed an implied easement over the

16 foot road extending all the way to Lerch's Creek. Count I also sought to enjoin Mr. and Mrs. Koch and Mr. Brewer from interfering with the plaintiffs' right-of-way, including the compelled removal of obstructions which existed in the right-of-way. Count II sought damages from Mr. and Mrs. Koch and Mr. Brewer for alleged interference with the plaintiffs' use of the right-of-way.

The trial court held that the Strathmeyers and Hantskes had an implied easement over the 16 foot road extending from their properties all the way to Lerch's Creek. The court also enjoined Mr. and Mrs. Koch and Mr. Brewer from interfering with the Strathmeyers' and Hantskes' use of the right-of-way, and ordered the removal of obstructions from the right-of-way. As to Count II of the complaint, the trial court entered judgment in favor of the defendants.

The Koches and Mr. Brewer appealed the adverse judgment under Count I to the Court of Special Appeals, which, in an unreported opinion, affirmed. Mr. and Mrs. Koch and Mr. Brewer filed in this Court a petition for a writ of certiorari which we granted. *Koch v. Strathmeyer,* 348 Md. 525, 704 A.2d 1245 (1998). In the certiorari petition, the following questions were presented:

"1. Must the existence of an implied easement be established by clear and convincing evidence or similar standard of proof?

"2. Did the Court of Special Appeals err in not reversing the Trial Court's judgment as to Count I of the Complaint when the Trial Court was clearly erroneous in finding that Plaintiffs had proven the 'clear manifestation' of the intent of the common grantor and the expectations of the original grantees necessary to establish that Plaintiffs now enjoy an implied easement to obtain access to Lerch Creek over an unimproved portion of a 16' right-of-way?"

## II.

We shall answer the two questions as one. The real issue presented to this Court is whether the creation of a "16 foot

road" bounding all seven original lots in a waterfront subdivision, and leading from the public road directly to the water, is sufficient evidence of the "clear manifestation" of the common grantor's intent necessary to establish that the present interior lot owners enjoy an implied easement to the water over that 16 foot road.  We shall hold that it is.

The standard of proof necessary to establish an implied easement, under circumstances like these, is the "clear manifestation" of the intent of the common grantor.  *Williams Realty Co. v. Robey*, 175 Md. 532, 539, 2 A.2d 683, 686 (1938).  As this Court stated in *Scholtes v. McColgan*, 184 Md. 480, 489, 41 A.2d 479, 483–484 (1945), intention "is a question of fact," and the surrounding circumstances of the case must be analyzed in order to truly understand an unexpressed intention.  *Turner v. Brocato*, 206 Md. 336, 351, 111 A.2d 855, 863 (1955) (concerning the intention to adopt a general scheme of development).

The facts are undisputed.  When George Hazard, the common grantor, conveyed the land then known as "Lerch's Point," he created a 16 foot road through the center of all seven lots.  The road was used as a boundary in every original conveyance, and every lot conveyed abutted the road.  The lots and the road were depicted in a plat adopted by the common grantor and referenced in all but one of the original conveyances.  The road itself extended from a 20 foot road which led to the "County Road," through all the lots, and down to the edge of the water, then known as "Gales Creek."  The existence, location, and size of this road is undisputed.

By operation of law, when Hazard conveyed the property by a metes and bounds description naming the 16 foot road as a boundary, each lot owner acquired fee simple title up to the center of the road contiguous to his or her property.  Maryland Code (1939), Art. 21, § 114 [1]; *Callahan v. Clemens*, 184 Md. 520, 526, 41 A.2d 473, 476 (1945) ("[t]he

---

1.  Presently Maryland Code (1974, 1996 Repl.Vol.), § 2–114 of the Real Property Article.

statute merely extends a presumption that was recognized at common law"). In addition, the law in this State is well settled that, when a property owner subdivides property and makes or adopts a plat designating lots as bordering streets, and then sells any of those lots with reference to the plat, an implied easement of way "passes from the grantor to the grantee ... over the street contiguous to the property sold." *Mullan v. Hochman,* 157 Md. 213, 221, 145 A. 554, 557 (1929). *See Atlantic Constr. Corp. v. Shadburn,* 216 Md. 44, 52, 139 A.2d 339, 343–344 (1958); *Beale v. Takoma Park,* 130 Md. 297, 306, 100 A. 379, 382 (1917); *Baltimore v. Frick,* 82 Md. 77, 83, 33 A. 435, 436 (1895); *Hawley v. Baltimore,* 33 Md. 270, 280 (1870); *Moale v. Baltimore,* 5 Md. 314, 321 (1854); *White v. Flannigain,* 1 Md. 525, 540 (1852). The parties do not deny that an easement over the road in favor of all lot owners exists. Their dispute lies in the scope of that easement. The petitioners assert that it is limited to ingress and egress between the individual lots and the public road, and the respondents insist that it also exists to provide their property with water access.

█ The general rule regarding implied easements over roads bordering property conveyed is that the easement only exists "until it reaches some other street or public way." *Hawley v. Baltimore, supra,* 33 Md. 270, 280. *See Hackerman v. Baltimore,* 212 Md. 618, 624–625, 130 A.2d 732, 736 (1957); *Mullan v. Hochman, supra,* 157 Md. 213, 221, 145 A. 554, 558; *Baltimore v. Frick, supra,* 82 Md. 77, 85, 33 A. 435, 436.

In order to understand the general rule and its intended application, it is necessary to discuss the facts surrounding this Court's previous cases applying the rule. In *Hawley v. Baltimore,* the common grantor sold several lots bordering on Mosher Street, lying between Madison and McCulloh Streets in Baltimore City, but he retained property along Mosher Street on the other side of McCulloh up to the intersection of Mosher and Druid Hill Avenue. When the City condemned Mosher Street between Madison and Druid Hill Avenue, the

common grantor sought damages from the City. The City argued that the common grantor was entitled to nominal damages only because he had dedicated his entire interest in Mosher Street when he conveyed the lots between Madison and McCulloh Streets. This Court held in favor of the common grantor because, "based upon the doctrine of implied covenants," the purchasers of the lots had acquired a right of way over Mosher Street only between Madison and McCulloh Streets, and to that extent only was there a dedication of Mosher Street to public use. *Hawley,* 33 Md. at 280. In every other case cited above, the facts were similar.

In each case applying the general rule, the common grantor sold land designated as lots and streets within a municipality. By doing so, there was a rebuttable presumption that the grantor intended two results: (1) to offer to dedicate the streets to public use; (2) regardless of whether or not the offer of dedication was accepted by the municipality, to grant the purchasers an implied right-of-way over the streets contiguous to their lots to the next closest street or public way. *See Hackerman,* 212 Md. at 624–625, 130 A.2d at 735–736; *Mullan,* 157 Md. at 220–221, 145 A. at 557–558; *Frick,* 82 Md. at 83–85, 33 A. at 436–437; *Hawley,* 33 Md. at 280. The cases do not discuss any limitation on the direction of the implied right-of-way, but only limit its length. For example, in *Hawley,* the lot owners could use Mosher Street to access either McCulloh or Madison Street, because they were both the next closest public streets, on either side of their lots. *See Hawley,* 33 Md. 270; *Hackerman,* 212 Md. 618, 130 A.2d 732, *Mullan,* 157 Md. 213, 145 A. 554; *Frick,* 82 Md. 77, 33 A. 435.

In accord with our previous holdings, if "Lerch's Creek" were actually "Lerch Street," there would be no doubt that all lot owners would enjoy an easement over the 16 foot road in order to access the "County Road" on one side and "Lerch Street" on the other. *See Hawley,* 33 Md. 270; *Frick,* 82 Md. 77, 33 A. 435. The question before this Court becomes what is the effect of the existence of the navigable waterway, as opposed to a roadway, at one end of the community. The petitioners claim the effect of the waterway is to cut off the

interior lot owners' easement at the border of the waterfront lots. They argue that the County Road, being on the east side of the community, closest to the interior lots, is the next closest "street or public way." *Hawley*, 33 Md. at 280. Therefore, they argue, the easement should be limited to ingress and egress between the individual lots and the County Road. The respondents claim that Lerch's Point, as a waterfront community, is not within the general rule applied in the above-cited cases, but is, instead, within an exception to that rule under this Court's previous holdings in *Klein v. Dove*, 205 Md. 285, 107 A.2d 82 (1954), and *Williams Realty Co. v. Robey*, 175 Md. 532, 2 A.2d 683 (1938).

The implied easement in this case does extend all the way to the water, not because it fits within any exception to the general rule, but because it follows the general rule. Under the general rule of implied easements over roads contiguous to lots conveyed, the scope of the easement is limited to the next "street or public way." *Hawley*, 33 Md. at 280. Lerch's Creek, a public navigable and tidal waterway, is owned and maintained by the State. Unlike private land owned by a third party, Lerch's Creek is a "public way." As a result, the fact that "Lerch's Point" is bounded on one side by a public waterway rather than a roadway does not affect the operation of the rule. All lot owners with property abutting the 16 foot road enjoy an implied easement over that road in order to access the County Road on the east side and to Lerch's Creek on the west side.

*Klein and Williams*, the cases cited by the respondents in favor of the existence of the right-of-way to the water, are somewhat distinguishable. In *Klein*, the interior lots did not abut the right-of-way at issue. As a result, the Court looked beyond the general rule of implied easements over contiguous roadways in order to understand the intent of the common grantor. In that case, the evidence showed that the original grantees relied upon a recorded plat in which the original owner expressly reserved ownership and control of all of the streets and roads within the development against dedication to the public and "for the exclusive and mutual use and benefit of

the owners of the lots abutting on said Streets and Roads." *Klein*, 205 Md. at 289, 107 A.2d at 84. The right-of-way at issue ran from the "main road" of the development to the "lake area," all of which was clearly designated on the recorded plat. 205 Md. at 291, 107 A.2d at 85. Although the "lake area" was not designated as a "community beach" on the recorded plat, this Court found that there was no other purpose for the 10 foot right-of-way other than to provide owners of the interior lots "access to boating, bathing, swimming, and fishing." 205 Md. at 291, 107 A.2d at 85. The intention of the common grantor to grant access to the beach for the "mutual use and benefit" of the entire community was clear, based upon the recorded plat and the nature of the property itself. After all, this Court said, a waterfront development can only be a waterfront development with a waterfront. *Klein*, 205 Md. at 292, 107 A.2d at 86.

*Williams* also did not involve a right of way contiguous to the plaintiffs' property. In *Williams*, the property at issue was the beach contiguous to the water. As a result, the rule regarding implied easements over roadways was irrelevant. Based upon the elements of equitable estoppel, this Court affirmed an injunction to prevent the repudiation of both verbal and written assurances made to the lot purchasers. *Williams*, 175 Md. at 540, 2 A.2d at 686. Testimony was presented in the trial court establishing that the original grantees bought their property in reliance upon an unrecorded plat shown to them by the sales agent. This unrecorded plat contained a "Community Beach and Park," which the sales agent represented would be kept open for the exclusive use of lot owners in the community. The deeds also made reference to the "community beach." Based upon the verbal assurances of the sales agents, as well as the reference to the community beach in the lot owners' deeds, this Court found that access to the water was the reason the owners purchased the lots in that community. 175 Md. at 539, 2 A.2d at 686. As a result, equity prevented the "repudiation" of such assurances, and the owners of the park were enjoined from creating a public

resort and night club on the land.   175 Md. at 540, 2 A.2d at 686.

Although the development at issue in the case at bar is also a waterfront community, there is no need to depart from the general rule of implied easements over ways bounding property conveyed.   In fact, the nature of the property encourages the application of the rule rather than a departure from it.   As this Court made clear in *Williams,* 175 Md. at 539, 2 A.2d at 686, there is a unique relationship between a waterfront development and the water, because "[t]here is naturally a . . . dependence, if indeed we should not say that access to the water is an essential, for in that access lies the purpose of the settlement and the purchase of lots in it."

The purpose of the general rule of implied easements over contiguous ways is to assure each property owner "full use and enjoyment of his property." *Boucher v. Boyer,* 301 Md. 679, 694, 484 A.2d 630, 638 (1984).   The limitation of this rule, to the next "street or public way," was designed to protect the retained property of the common grantor from both the purchasers as well as the general public. *See Hackerman,* 212 Md. 618, 130 A.2d 732; *Mullan,* 157 Md. 213, 145 A. 554; *Frick,* 82 Md. 77, 33 A. 435; *Hawley,* 33 Md. 270.   In the case at bar, the next "public way" on the west side of the community is a waterway.   As this Court explained in *Williams,* access to the water may be "an essential" in a waterfront community. Although such access may not always be the intent of the common grantor, the facts in this case unequivocally support the only reasonable interpretation of the actions of the common grantor.   George Hazard conveyed every lot in the community as bounding on the roadway.   The roadway bisected the development and extended all the way to the water.   In order to support the "full use and enjoyment" of the property at issue, it is only logical to conclude that the interior lot owners enjoy an implied easement over the 16 foot road all the way to the water.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.   PETITIONERS TO PAY COSTS.*