274

64 A.3d 916

Thomas C. LINDSAY, Sr., et al.

v.

ANNAPOLIS ROADS PROPERTY OWNERS
ASSOCIATION, et al.

No. 63, Sept. Term, 2012.

Court of Appeals of Maryland.

April 24, 2013.

276

Linda M. Schuett, (Linowee and Blocher, LLP, Annapolis, MD), on brief, for Petitioners.

No argument on behalf of Respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

HARRELL, J.

Barbara and Stanley Samorajcyzk (referred to collectively as "the Samorajcyzks") believed they had the right to use a ten-foot wide strip of land (hereinafter referred to as "the Strip"),[1] which serves and is used currently as a paved driveway to a property owned by the Thomas C. Lindsay Revocable Trust [2] ("the Lindsay Trust") adjacent to the Samorajcyzk's property. On 6 June 2007, the Annapolis Roads Property Owners Association ("ARPOA") (the community homeowners association) and six residents of the subdivision (referred to collectively as "Plaintiffs")[3] filed suit in the Circuit Court for Anne Arundel County against the Lindsay Trust and Thomas C. Lindsay, Sr. (referred to collectively as "Petitioners"), seeking, in relevant part, a declaratory judgment that ARPOA

---

**1.** The Strip binds four lots, as depicted on a Plat filed in 1928 in the Land Records for Anne Arundel County, creating the Annapolis Roads subdivision. The Strip is described more fully *infra*.

**2.** Counsel for Petitioners indicated before this Court at argument that Thomas C. Lindsay passed away during the pendency of the litigation. The Trust is now the Thomas C. Lindsay Irrevocable Trust.

**3.** Plaintiffs were ARPOA, the Samorajcyzks, John and Margaret Talbot, and Elizabeth and William Ochs.

holds fee simple title to the Strip and that the Samorajcyzk property enjoys an easement over the Strip. Petitioners responded with a counterclaim seeking a declaratory judgment that the Lindsay Trust holds fee simple title to the Strip and that no easement exists over the Strip in favor of any plaintiff. The Circuit Court declared ultimately that: (1) ARPOA has no right, title, or interest in the Strip; (2) the Lindsay Trust holds all right, title, and interest in the Strip; and, (3) the Lindsay Trust's interest in the Strip is subject to an easement appurtenant to the Samorajcyzk property for the purpose of ingress and egress. The Court of Special Appeals affirmed in a reported opinion.[4] *See Annapolis Roads Property Owners Assoc. v. Lindsay*, 205 Md.App. 270, 45 A.3d 749 (2012). Petitioners filed a petition for *certiorari*, challenging the decision of the intermediate appellate court with respect only to its affirmance of the Circuit Court's judgment that an easement exists over the Strip for the benefit of the Samorajcyzk property. No cross-petition was filed by Respondents challenging the judgment of the Circuit Court and the Court of Special Appeals that the Lindsay Trust owns fee simple title to the Strip.[5] Thus, we are presented only with the issue of whether an easement for purposes of ingress and egress exists appurtenant to the Samorajcyzk property.

## FACTUAL BACKGROUND

The Annapolis Roads subdivision was created by the filing of a Plat on 18 September 1928 among the land records for

---

**4.** Since commencement of this litigation, there has been a significant change in the composition of the original Plaintiffs. Elizabeth Ochs and John Talbot passed away. The Samorajcyzks sold their property. The record does not indicate who owns the Samorajcyzk property currently. Thus, because the Samorajcyzks were the property owners at the inception of this dispute, we refer to them occasionally as the owners of Lot 18 (a relevant reference point) for purposes of clarity.

Only ARPOA, the Samorajcyzks, and Margaret Talbot were appellants and cross-appellees before the Court of Special Appeals, and are thus before this Court, although they did not participate in this Court. We will refer to these parties collectively as "Respondents."

**5.** Respondents did not file a brief or participate in oral argument before this Court.

Anne Arundel County.[6, 7] We are concerned primarily with the creation of and rights attendant to the ownership of four lots (18, 19, 20, and 21)[8] and an abutting strip of land approximately ten feet in width and one hundred-fifteen feet in length ("the Strip").[9] The relevant portion of the subdivision is bounded by Lake Ogleton (a body of water) on one side and Carrollton Road[10] on the other, with two rows of lots in between. Lots 19 and 20 abut Carrollton Road. Lots 18 and 21 abut Lake Ogleton, and are stacked behind Lots 19 and 20, respectively, in relation to Carrollton Road. As depicted on the Plat, Lots 18 and 21 would not have access to Carrollton Road, except by use of the Strip, which runs in between Lots 19 and 20, and partially between Lots 18 and 21.[11]

The Strip, as conceived originally, is approximately ten feet wide and contains two parts. The first part, depicted on the 1928 Plat, runs approximately one hundred and fifteen feet from Carrollton Road in a southerly direction toward (but not

6. A copy of the seminal 1928 Plat is appended to this opinion as Appendix "A."

7. The development existed previously under the name of "Belmont Farms," but was conveyed by then-owner, The Armstrong Company, to the Annapolis Roads Company ("ARC") in 1927. The 1928 Plat subdivided the properties and depicts the lot subdivisions central to understanding the dispute at issue here.

8. All lot references are to the lots as depicted on the 1928 Plat.

9. For purposes of simplicity and clarity, we recite here only the facts necessary to resolve the issues before this Court. A more complete factual and procedural history may be found in the opinion of the Court of Special Appeals. See Annapolis Roads, 205 Md.App. 270, 45 A.3d 749 (2012).

10. Our review of the record reveals that some documents refer to the principal road of the subdivision as "Carrollton Road," while others refer to it as "Carrolton Road." For purposes of consistency with the other courts' opinions in the travail of this case, we shall refer to it as "Carrollton Road."

11. Lot 18 also is depicted as having access to Carrollton Road by virtue of a similar strip on the other side of Lot 19, abutting Lot 16. The use or ownership of that strip is not at issue here.

touching the shoreline of) Lake Ogleton, between Lots 19 and 20 and Lots 18 and 21, respectively. The first approximately one hundred feet of the Strip, beginning at Carrollton Road, is bounded on either side by Lots 19 and 20. The remaining approximately fifteen feet extends beyond the back lot lines of Lots 19 and 20 and between Lots 18 and 21, ending in a point at the lot line between Lots 18 and 21. The southerly terminus of the Strip between Lots 18 and 21 is oddly triangular in shape, with a ten-foot opening where the Strip meets Lots 19 and 20. The second part of the Strip, which extends beyond the original southerly terminus depicted on the Plat toward Lake Ogleton, was created in 1962 (referred to hereinafter as "the 1962 Extension") by the express reservation of an easement by the then-owners of Lot 18, Thomas and Dorothy Horton ("the Hortons"), over a portion of Lot 18 that was conveyed to the owners of Lot 19. This portion of the Strip extends approximately thirty-five feet, and is five feet wide, over a portion of Lot 18 as that lot was depicted on the 1928 Plat. *See* Appendix "B."

The Court of Special Appeals held, and it is undisputed before this Court, that the Strip "was a part of the lots binding it, and when lots were conveyed, the portion of the Strip binding the lots [to the mid-point of the Strip] was also conveyed." *Annapolis Roads,* 205 Md.App. at 301–02, 45 A.3d at 768. The panel of the intermediate appellate court determined that, as a result of subsequent transactions, the Lindsay Trust possessed fee simple title to the Strip. Petitioners dispute only the finding that the owners of Lot 18, formerly the Samorajcyzks, have an easement over, and therefore the right to use, the Strip. Because the basis for the Samorajcyzks' asserted right to use the Strip is claimed solely as an implied easement by reference to a plat, we explain (of necessity) the transfer history of the original four lots at issue as relevant.

Lot 18

The first transaction of Lot 18, following the filing of the 1928 Plat, occurred on 10 December 1928, when the Annapolis

Roads Company ("ARC") conveyed Lot 18 to F.K. Mohler. The deed stated, in relevant part:

[ARC] does grant and convey unto [Mohler], his heirs and assigns, in fee simple, all that piece or parcel of ground situate, lying and being in the Second Election District of Anne Arundel County, State of Maryland, being part of the same land which [ARC] obtained from The Armstrong Company by deed dated the 2nd day of December, 1927, . . . to wit: Lot numbered Eighteen (18) of Section "D" in the development known as "Annapolis Roads", as designated on the plat of said Annapolis Roads made by Olmsted Brothers, which said plat is recorded among the Land Records of Anne Arundel County . . . ;

Together with the buildings and improvements thereupon erected, made, or being; and all and every, the rights, alleys, ways, privileges, appurtenances and advantages to the same belong or in anywise appertaining.

On 10 April 1929, F.K. Mohler re-conveyed Lot 18 to ARC. Approximately two years later, on 20 February 1931, ARC conveyed Lot 18, again, to Mohler. The 1931 deed stated, in pertinent part:

[ARC] does grant and convey unto [Mohler], his heirs and assigns, in fee simple, all that piece or parcel of ground situate, lying and being in the development known as "Annapolis Roads" in the Second Election District of Anne Arundel County, State of Maryland, being part of the same land which the [ARC] obtained from The Armstrong Company by deed dated the 2nd day of December 1927 and recorded among the Land Records of Anne Arundel County . . ., to wit:

Lot eighteen (18) in Section "D"

Together with the buildings and improvements thereupon erected, made, or being; and all and every the rights, alleys, ways, privileges, appurtenances and advantages to the same belonging or in anywise appertaining.

Lot 18, after a series of deed transfers not relevant to the question before us, became divided by deed as a result of

multiple transactions. On 30 October 1957, the then-owners of Lot 18, Eliot and Shirley Powell ("the Powells"), conveyed a portion of Lot 18 to the then-owners of Lot 19, Harry and Grace Solomon ("the Solomons"). The 1,770 square-foot triangular portion of Lot 18 conveyed by the Powells ended approximately five feet short of the lot line between Lot 18 and Lot 21, leaving the Powells with title to a five-foot wide Strip extension, approximately thirty-five feet in length, extending toward Lake Ogleton from the initial ten-foot Strip depicted on the Plat. *See* Appendix "B."

In 1961, the Powells conveyed what remained of Lot 18 (the original Lot 18 minus the triangular portion conveyed to the Solomons in 1957) to the Hortons. On 15 August 1962, the Hortons conveyed an additional portion of Lot 18 to then-owners of Lot 19, the Solomons. This portion consisted of the five-foot wide Strip extension that was retained by the Powells in the 1957 conveyance to the Solomons, as well as the portion of the Strip that abutted Lot 18. *See Annapolis Roads,* 205 Md.App. at 302 n. 17, 45 A.3d at 768 n. 17. The deed executed by the Hortons in favor of the Solomons conveying the five-foot wide Strip extension contained the following language:

> Reserving, however, a right of ingress and egress to Carrollton Road over the above described property for the benefit of the grantors herein, their heirs and assigns forever.

Thus, although the five-foot wide Strip extension was joined thereby with Lot 19 under common ownership, the Hortons reserved expressly for themselves, their heirs, and assigns, an easement over the 1962 Extension, the portion of the Strip abutting Lot 18, and also, purportedly, over the remainder of the Strip, for the benefit of Lot 18.

In 1992, the Samorajcyzks purchased Lots 18 and 17. The Samorajcyzks owned also portions of Lots 15 and 16. In 2007, the Samorajcyzks executed a Lot Merger Agreement, recorded among the Land Records for Anne Arundel County, in compliance with § 18–4–203–04 of the Anne Arundel County Code,[12] combining the portions of Lot 15, Lot 16, Lot 17, and

---

12. § 18–4–203 of the Anne Arundel County Code states, in relevant part:

Lot 18 in their ownership.[13] Apparently, the Samorajcyzks

(a) General prohibition against use of multiple lots to serve principal use. On and after September 25, 2003, multiple lots under the same ownership may not be used for the purpose of serving a principal use or be merged for the purpose of serving a principal use unless the requirements of this section are met.

(b) Merger by operation of law. Contiguous lots under the same ownership that are separated by a boundary line upon or across which a principal use is located on or after September 25, 2003, merge by operation of law on that date, and the Office of Planning and Zoning thereafter shall require the owner of the merged lots to execute and record a lot merger agreement as a condition precedent to receiving a permit for demolition, development, grading, or construction activity.

(c) Merger by agreement. Contiguous lots shall be merged by the owner of the lots for the purpose of serving a principal use, and the owner shall execute and record a lot merger agreement as a condition precedent to receiving a permit that requires use of the lots in service of a principal use.

(d) Unmerger. Some or all lots merged under subsections (b) or (c), or under a lot consolidation agreement executed and recorded before September 25, 2003, may be unmerged if:

(1) the lots no longer are used in service of a principal use;

(2) the lots comply with the minimum area and dimensional requirements of the zoning district in which the lots are located in effect at the time of the unmerger;

(3) all or party of any lots in the critical area were part of a subdivision approved on or after August 22, 1988; and

(4) the owner executes and records in the land records of the County at the owner's expense an instrument unmerging the lots in the form required by the Office of Planning and Zoning.

§ 18–4–204 states, in relevant part, that, "[e]xcept as otherwise provided in this subtitle, lots merged under this subtitle shall be treated as a single lot for purposes of this article."

**13.** The Lot Merger Agreement states, in relevant part:

Upon execution of this Agreement by all parties, the Lots shall be merged for the purpose of serving a single principle use as described by and under the conditions imposed by Section 201 through 205, of title 4, of Article 18 of the Anne Arundel County Code.
* * *

For the purposes of complying with the Anne Arundel County zoning and subdivision codes, lot lines separating the Lots, as shown on the referenced subdivision plat, shall no longer be considered as lot lines for any zoning or subdivision purpose, and the Lots shall, for building and development purposes be considered as a single lot.

[ ] The parties hereby agree that the Lots shall not be unmerged or resubdivided except in compliance with the laws of Anne Arundel County.
* * *

since have sold the property, which is located at 2525 Carrollton Road.

Lot 19

Lot 19, now designated as 2515 Carrollton Road, was conveyed by ARC to The Homes Improvement Company by deed dated 8 October 1928.[14] Later that year, The Homes Improvement Company conveyed Lot 19 to Mr. and Mrs. Clinton Bradley. No subsequent conveyance relevant to this dispute occurred until 1957, when the Solomons came into ownership of Lot 19. The Solomons acquired portions of Lot 18 in 1957 and 1962 from then-owners the Powells and the Hortons, respectively. In 2006, Lot 19 (and the attendant portions of Lot 18) were conveyed to the Lindsay Trust, which remains the owner today.

Lots 20 and 21

ARC conveyed both Lot 20 and Lot 21, known now as 2509 Carrollton Road, to Helen Sagrario by deed dated 23 June 1932. On 25 May 1976, then-owners of Lots 20 and 21, John and Margaret Talbot, conveyed title to the one-half of the Strip binding Lots 20 and 21 to the then-owners of Lot 19, the Solomons. The deed stated, in pertinent part: "all of that 10 foot path lying between Lots 19 and 20 . . . including that part of said 10 foot path or road lying contiguous to [lot] 21 . . . to the end that said path or road may be closed, vesting title thereto in the [owners of Lot 19]."[15] Margaret Talbot is the present owner of Lots 20 and 21.

---

Property Owner and the County agree and understand that this Agreement shall not affect the legal description or title to the Lots.

14. The deed stated, in relevant part:

[ARC] does grant and convey unto [The Homes Improvement Company], its successors and assigns, in fee simple, all that piece or parcel of ground situate, lying, and being in Anne Arundel County, State of Maryland, ... to wit: Lot numbered nineteen (19) of Section "D" in the development known as "Annapolis Roads," as designated on the plat of said Annapolis Roads made by Olmstead Brothers, which said plat is intended to be recorded among the Land Records of Anne Arundel County. . . .

15. The courts considering this litigation before us determined that, in conveying Lots 20 and 21 to the Solomons in this manner, the Talbots

## PROCEDURAL HISTORY

Respondents filed suit in the Circuit Court for Anne Arundel County on 6 June 2007, seeking a declaratory judgment stating, in relevant part, that ARPOA owned title to the Strip, that the Strip may be used by ARPOA's members, and that the Samorajcyzks, as the owners of Lot 18, have the rights to an easement over the Strip.[16] Petitioners filed a Counterclaim for Declaratory and Injunctive Relief on 1 October 2007, seeking originally a declaratory judgment that a pier on Lake Ogleton built by the Samorajcyzks was unlawful and should be removed. The counterclaim was amended subsequently, on 6 October 2009, to strike the original claim regarding the pier and, instead, sought a declaration that the Lindsay Trust owned fee simple title to the Strip and that no easement existed over the Strip.

On 30 October 2008, Petitioners filed a Motion for Partial Summary Judgment seeking a declaration that the Thomas C. Lindsay Revocable Trust is the fee simple owner of the Strip, or, in the alternative, that ARPOA is not the owner of the Strip. In a memorandum opinion issued on 10 August 2009, the Circuit Court determined that ARPOA held no right, title, or interest in the Strip because its predecessor in interest, ARC, failed to reserve expressly its rights, title, or interest in the Strip when it conveyed each of the four abutting lots.[17]

---

also conveyed any rights to an easement that they may have had at the time. Whether Lots 20 and 21 retain an easement over the Strip is not at issue in this appeal.

16. Respondents claimed initially also that the Lindsays misrepresented, intentionally and/or negligently, on a permit application that they owned title to the Strip. Consequently, Respondents sought initially compensatory damages, the revocation of the permit issued to the Lindsays, and the destruction of a building addition erected on the Lindsay property by virtue of the permit. Respondents dismissed later these claims voluntarily, without prejudice, conceding that they failed to exhaust available administrative remedies with regard to the permit-related claims.

17. ARPOA filed a Notice of Appeal to the Court of Special Appeals, but dismissed voluntarily the appeal on 15 October 2009, noting that a final judgment on all claims had not been issued by the Circuit Court.

The court did not determine, at that point, who or what entity had title to the Strip.[18]

On 9 September 2009, Plaintiffs filed a motion for partial summary judgment, seeking a declaratory judgment that the owners of Lots 18, 19, 20, and 21 owned the Strip as tenants in common. On 6 October 2009, after filing their Amended Counterclaim, Petitioners filed a motion for summary judgment on their Amended Counterclaim. Petitioners requested a declaratory judgment that the Lindsay Trust owns the entirety of the ten-foot wide Strip along its entire length in fee simple, and that the Strip is not encumbered by an easement running to the benefit of any party to the litigation. Specifically, with regard to the latter contention, Petitioners argued that an implied easement by reference to the Plat did not exist because the 1931 Deed, by which ARC reconveyed Lot 18 to Mohler, did not refer explicitly to the 1928 Plat, nor did the Plat itself contain or set forth a right of way or easement. Moreover, Petitioners contended that the Samorajcyzks could not possess an easement by necessity over the Strip, because (1) the Samorajcyzks acquired alternative access to Carrollton Road over Lots 15 and 16; and, (2) Lot 18 was merged, by operation of law and by execution of a Lot Merger Agreement by the Samorajcyzks, thus extinguishing any claimed easement by necessity by securing alternative access to Carrollton Road. Plaintiffs retorted that (1) an easement by necessity existed still in favor of Lot 18 because the Samorajcyzks have a continuing need for deliveries and service to the rear of their property, which is inaccessible by alternative routes, and (2) an easement by reference to a plat exists because the plat referenced in the relevant deeds depicts Lots 18 and 21 "as abutting a right of way, adjacent to and abutting Carrollton Road."

---

**18.** The trial court judge did not rule on Petitioners' claim that the Lindsay Trust was the owner of the Strip, apparently because Petitioners had not filed an affirmative pleading seeking such a judgment at that point in the litigation. Petitioners' Amended Counterclaim remedied this defect.

At a hearing before the trial judge on 12 March 2010, Plaintiffs requested that (1) the Circuit Court reconsider its prior declaratory judgment finding that ARPOA did not have any right, title, or interest in the Strip; (2) in the alternative, the Circuit Court enter a declaratory judgment that the owners of Lots 18, 19, 20, and 21 own the Strip as tenants in common; and, (3) the Circuit Court enter a declaration that the Samorajcyzks and the Talbots have an easement over the Strip, as the present owners of Lots 18, 20, and 21.

The Circuit Court, in a memorandum opinion issued on 30 June 2010, determined that: (1) the Lindsay Trust holds fee simple title to the Strip; (2) the Talbots, as the owners of Lot 20 and 21, do not have an easement over the Strip because they conveyed in 1976 their interest in the Strip to the owners of Lot 19; and, (3) an implied easement by plat reference over the Strip exists appurtenant to Lot 18 for the purpose of ingress and egress to Carrollton Road. The court reasoned that, because the first conveyance of Lot 18 established an implied easement by plat reference over the Strip and the Hortons reserved expressly an easement in 1962, an express easement existed in favor of the Samorajcyzks over both the 1962 Extension and the Strip. Specifically, the Circuit Court found that, contrary to Petitioners' assertion that the 1931 Deed was the relevant deed by which to determine the existence of an easement, the 1928 Deed, as the original conveyance, was the pertinent deed. Thus, because the 1928 deed referred expressly to the 1928 plat, which the court found depicted a right of way, it was sufficient to create an implied easement by reference to a plat. Moreover, because Lot 18, as the dominant tenement, had not been owned jointly with the servient tenement subsequent to the easement's creation, nor had the easement been extinguished otherwise, the Samorajcyzks enjoyed the right to use the easement over the Strip and the 1962 Extension.

Respondents noted an appeal to the Court of Special Appeals, challenging the Circuit Court's judgment that the Lindsay Trust owned the Strip in fee simple. Petitioners filed a cross-appeal, seeking review of the Circuit Court's finding that

an easement over the Strip existed in favor of the Samo-rajcyzks. In a reported opinion, a panel of the intermediate appellate court affirmed the Circuit Court's judgment on both issues. *Annapolis Roads Property Owners Assoc. v. Lindsay*, 205 Md.App. 270, 45 A.3d 749 (2012). With respect to the existence of an easement, the Court of Special Appeals examined first the 1962 deed from the Hortons to the Solomons, by which a portion of Lot 18 was conveyed, determining that it created the 1962 Extension by express reservation. *Id.* at 320, 45 A.3d at 779. Moreover, the intermediate appellate court "agree[d] with the circuit court that the [1928] conveyance of Lot 18 established an easement to use the Strip to access Carrollton Road, as 'a deed that is silent as to the right of way but refers to a plat that establishes such a right of way creates a rebuttable presumption that the parties intended to incorporate the right of way in the transaction.'" *Id.* at 323, 45 A.3d at 781 (quoting *Boucher v. Boyer*, 301 Md. 679, 689, 484 A.2d 630, 635 (1984)) (emphasis omitted). Thus, because "[t]he reference to the 1928 Plat in the deed from ARC to Mohler conveying Lot 18 creates a strong presumption that the conveyance included an easement to use the Strip for ingress and egress to and from Carrollton Road," and nothing in the 1931 conveyance intimated an intent to extinguish the easement, the court determined that the Samorajcyzks, as the owners of Lot 18, enjoyed an easement over the Strip. *Id.* at 325–26, 45 A.3d at 782. Although the intermediate appellate court acknowledged Petitioners' argument that, by virtue of the merger of Lot 18 with the other lots owned by the Samorajcyzks, any easement appurtenant to Lot 18 is extinguished by operation of the lot merger provisions of the Anne Arundel County Code, the court did not address that argument directly. *Id.* at 330, 45 A.3d at 785. Instead, the court interpreted the argument as a contention that the Strip was intended to be dedicated to use by one landowner only. *Id.* Because, however, an easement implied by reference to a plat displayed a clear intention that the owners of Lot 18 would have ingress and egress over the Strip, regardless of who owned the Strip, the Court of Special Appeals rejected the

contention that the vesting of fee simple title in the Lindsays extinguished the easement. *Id.* at 331, 45 A.3d at 786.

Petitioners filed a petition for writ of *certiorari* with this Court, which we granted on 21 September 2012, 428 Md. 543, 52 A.3d 978 (2012), to consider the following questions:

(1) Whether an implied easement by reference to a plat may be created without an express reference to the plat?

(2) Whether an implied easement by reference to a plat is created when the plat creates a strip of land but does not contain any words that demonstrate the existence of easement rights over the strip?

(3) Whether an easement appurtenant to an unimproved lot may be used by the owner of other improved lots that are forever merged into the lot with the easement appurtenant?

## STANDARD OF REVIEW

We review a declaratory judgment entered pursuant to a motion for summary judgment to determine whether it was correct as a matter of law. *Atkinson v. Anne Arundel Cnty.*, 428 Md. 723, 741, 53 A.3d 1184, 1195 (2012); *Catalyst Health Solutions, Inc. v. Magill*, 414 Md. 457, 471–72, 995 A.2d 960, 968 (2010). Here, there is no dispute over any fact material to the resolution of the case. Because the parties dispute only issues of law, *see White v. Pines Cmty. Improvement Ass'n, Inc.*, 403 Md. 13, 31, 939 A.2d 165, 175 (2008) ("The interpretation of mortgages, plats, deeds, easements and covenants has been held to be a question of law."), we review the decision of the intermediate appellate court to determine whether it was correct legally. In construing the creation of an easement, the primary rule "is that a court should ascertain and give effect to the intention of the parties at the time the [easement] was made, if that be possible." *Garfink v. Cloisters at Charles, Inc.*, 392 Md. 374, 392, 897 A.2d 206, 216–17 (2006) (quoting *Miller v. Kirkpatrick*, 377 Md. 335, 351, 833 A.2d 536, 545 (2003)).

### ANALYSIS

 Petitioners dispute the conclusion of the Court of Special Appeals that an easement by reference to a plat exists in favor of the owners of Lot 18 over the entirety of the ten-foot Strip. "[A]n easement is a 'nonpossessory interest in the real property of another,'" *USA Cartage Leasing, LLC v. Baer,* 429 Md. 199, 207, 55 A.3d 510, 515 (2012) (quoting *Rogers v. P–M Hunter's Ridge, LLC,* 407 Md. 712, 729, 967 A.2d 807, 818 (2009)), and provides generally the owner of one property a right of way over the real property of another. *Sharp v. Downey,* 197 Md.App. 123, 160, 13 A.3d 1, 23 (2010), *vacated on other grounds,* 428 Md. 249, 51 A.3d 573 (2012). Thus, where a private easement, or one not enjoyed by the general public, exists, two distinct tenements arise. *Bd. of Cnty. Comm'rs of Garrett Cnty. v. Bell Atlantic–Md., Inc.,* 346 Md. 160, 175, 695 A.2d 171, 179 (1997) (quoting *Consol. Gas Co. v. Mayor & City Council of Balt.,* 101 Md. 541, 545, 61 A. 532, 534 (1905)). The property benefitting from the easement is referred to generally as the dominant estate, while the property subject to or burdened by the easement is the servient estate. *USA Cartage Leasing,* 429 Md. at 208, 55 A.3d at 515; *Rogers,* 407 Md. at 715 n. 1, 967 A.2d at 810 n. 1.

 "An easement may be created by express grant, by reservation in a conveyance of land, or by implication." *USA Cartage Leasing,* 429 Md. at 208, 55 A.3d at 515 (citing *Kobrine, LLC v. Metzger,* 380 Md. 620, 635, 846 A.2d 403, 412 (2004)). Here, Petitioners do not contest the Court of Special Appeals's conclusion that the 1962 Deed conveying a portion of Lot 18 from the Hortons to the Solomons created an easement by reservation over the 1962 Extension. In dispute, however, is whether that Deed also reserved expressly an easement over the Strip itself. As the lower courts both noted, the Hortons could reserve an easement over the Strip only if, in 1962, the Hortons enjoyed a right of way over the Strip. Because it is undisputed that no express easement existed over the Strip prior to 1962, we consider only whether an

easement by implication arose prior to the Hortons' 1962 conveyance.

 Easements by implication may arise "by prescription, necessity, the filing of plats, estoppel, and implied grant or reservation where a quasi-easement has existed while the two tracts are one." *Boucher v. Boyer,* 301 Md. 679, 688, 484 A.2d 630, 635 (1984) (internal citations omitted). Petitioners challenge the determination by the Court of Special Appeals that an implied easement by reference to a plat exists over the Strip for the benefit of Lot 18.[19] Implied easements by reference to a plat are created where the deed allegedly establishing the easement "contains a reference to a plat that contains a right of way." *Id.* at 688–89, 484 A.2d at 635. Under the common law, a reference to a plat in a deed incorporates generally that plat as part of the deed. *See id.* at 689, 484 A.2d at 636; *see also Kobrine,* 380 Md. at 639, 846 A.2d at 414 (noting "the well-settled rule that when a property owner subdivides property and makes or adopts a plat designating lots as bordering streets, and then sells any of those lots with reference to the plat, an implied easement of way passes over the street contiguous to the property sold" (quoting *Koch v. Strathmeyer,* 357 Md. 193, 199, 742 A.2d 946, 949 (1999)) (internal quotation marks omitted)). In *Boucher v. Boyer,* we noted that "a deed that is silent as to the right of way but refers to a plat that establishes such a right of way creates a rebuttable presumption that the parties intended to incorporate the right of way in the transaction." 301 Md. at 689, 484 A.2d at 635. "A party may therefore point to the existence of the plat to establish that the parties intended that the right of way depicted in the plat be used by the grantee." *Id.*

Petitioners argue that it is the second conveyance to Mohler in 1931, and not the original conveyance in 1928, that governs the resolution of the dispute before us. Specifically, Petition-

19. Whether the facts of this case present a case of an easement by necessity at the time the easement was created is not before us.

ers contend that any easement by reference to a plat arising from the 1928 conveyance was extinguished when Lot 18 was conveyed back from Mohler to ARC, its original owner. Thus, considering the second conveyance to Mohler, Petitioners maintain that no implied easement arose by reference to the 1928 Plat, because the 1931 deed did not (1) refer expressly to the 1928 Plat; or, (2) even if it did refer sufficiently to the Plat, the 1928 Plat does not create easement rights over the Strip.

In contrast to Petitioners' assertion that the 1931 deed governs the dispute, the Court of Special Appeals relied, as did the Circuit Court, on the 1928 deed from ARC to Mohler to determine that an easement appurtenant to Lot 18 existed over the Strip. Petitioners acknowledge that the 1928 deed conveyed Lot 18 by express reference to the Plat, but insist that, by virtue of its subsequent conveyance back to Mohler, it is not the material reference deed to consult in resolving the present dispute. Thus, we must determine first which is the relevant conveyance creating the asserted easement.

I. Which Is the Relevant Conveyance
Creating the Implied Easement?

Petitioners maintain that any easement by reference to the 1928 Plat conveyed by ARC in the first conveyance to Mohler was extinguished by the 1929 re-conveyance to ARC. Specifically, Petitioners argue that "[t]he conveyance of Lot 18 back to ARC also conveyed back to ARC any implied easement by reference to the Plat created in connection with the first conveyance because the dominant and servient estates were once again under common ownership." Although unity of ownership of both the dominant and the servient estates extinguishes generally any easements as between those lots, *see, e.g., Kelly v. Nagle,* 150 Md. 125, 131, 132 A. 587, 590 (1926), the application of that principle here does not render the 1928 deed to Mohler irrelevant.

In reviewing the transfer history of Lots 18, 19, 20, and 21, we note that all four lots were held originally in common ownership by ARC. As the Court of Special Appeals held, title

to the mid-point of the Strip abutting each lot passed with the ownership of the lots. *Annapolis Roads*, 205 Md.App. at 303–04, 45 A.3d at 769. In October 1928, Lot 19 was sold to The Homes Improvement Company, and, shortly thereafter, to the Bradley family. Lot 18 was sold by ARC to Mohler in December 1928; reconveyed by Mohler to ARC in April 1929; and then conveyed, for the third time, by ARC to Mohler in February 1931. Lots 20 and 21 remained in the ownership of ARC until they were conveyed to Helen Sagrario in 1932.

Assuming, for the moment, that the 1928 deed, conveying originally Lot 18 from ARC to Mohler, was sufficient to create an easement by reference to a plat over the entirety of the Strip in favor of Lot 18, the easement was extinguished over the portions of the Strip abutting Lots 20 and 21 when Lot 18 was reconveyed to ARC. Lots 20 and 21 were also owned by ARC in 1929. Thus, the dominant and servient estates, with the exception of Lot 19, were under common ownership. We have held for a very long time that, "when the same person becomes the owner of the dominant and servient estates ... the unity of the two estates in the one individual necessarily extinguishes and merges the easement appurtenant to the dominant estate, because no person can have an easement in the land which he himself owns." *Kelly*, 150 Md. at 131, 132 A. at 590 (quoting *Duval v. Becker*, 81 Md. 537, 545–46, 32 A. 308, 309 (1895)). Thus, any easement running to the benefit of Lot 18 over Lots 20 and 21 was extinguished in 1929, when ARC held title to the three lots.[20] Any easement rights

---

**20.** Some jurisdictions hold that an easement over a common area in a subdivision cannot be extinguished unless all of the dominant and servient estates in the subdivision are in common ownership. *See, e.g., Tract Development Serv., Inc. v. Kepler*, 199 Cal.App.3d 1374, 246 Cal.Rptr. 469, 476 (1988) (noting that, because "each owner in the subdivision [had] the right to use every other owner's property to travel both within and through the subdivision" by virtue of the subdivision map, "the whole of the subdivision [was] in essence the servient tenement to each lot, and each lot [was] servient to every other lot[;]" thus, no merger could occur "unless there [was] common ownership of the entire subdivision"). Such cases deal generally with easements over *all* roads appearing on a subdivision plat that are considered appurtenant to each lot in the subdivision, rather than the limited

created over Lot 19 by the 1928 conveyance of Lot 18 to Mohler, however, remained intact, as Lot 19 was conveyed previously to a third party.

We note, therefore, that with respect to an alleged easement running to the benefit of Lot 18 over the portion of the Strip conveyed by ARC to Homes Improvement Company in 1928 (Lot 19), the 1928 deed by ARC conveying Lot 18 to Mohler is the relevant transaction.[21] With respect to any easement over

circumstance at issue here. Many jurisdictions recognize merger in circumstances similar to those in the present case. *See, e.g., Cheever v. Graves,* 32 Mass.App.Ct. 601, 592 N.E.2d 758, 762 (1992) (finding partial merger and extinguishment of an easement where some, but not all, of the lots were held in common ownership); *Mularoni v. Bing,* 306 Mont. 405, 34 P.3d 497, 503 (2001) (noting that, when two of three tracts benefitted by easements were joined under common ownership, the easements were extinguished "as between those two tracts"); *Schlager v. Bellport,* 118 Wash.App. 536, 76 P.3d 778, 781–82 (2003) (finding that merger of two out of three lots subject to a covenant extinguished the covenant as between those two lots); Restatement of Property § 497 Cmt. c ("The extinguishment of an easement, when caused by unity of ownership alone, extends as far as the unity of ownership extends and no farther. Where there is unity of ownership of some only of the interests which may exist in a dominant and a servient tenement, the easement continues to exist as to the remaining interests."); Restatement (Third) of Property: Servitudes § 7.5 Reporter's Note (stating that the Restatement (Third) of Property is to be read consistently with the first Restatement of Property).

**21.** Although Lot 19 was conveyed to The Homes Improvement Company prior to the conveyance of Lot 18 to Mohler in 1928, Lot 19 was conveyed by express reference to the 1928 Plat. Thus, if the 1928 deed to Mohler was sufficient to grant an implied easement by reference to the 1928 Plat over the Strip in favor of Lot 18, the 1928 deed to The Homes Improvement Company was also likely sufficient to reserve impliedly an easement by reference to the 1928 Plat for the benefit of the other property owners abutting the Strip. *See, e.g., McKenrick v. Savings Bank of Balt.,* 174 Md. 118, 122, 197 A. 580, 582 (1938) ("When it appears, by a fair interpretation of the words of the grant, that it was the intent of the parties to create or reserve a right in the nature of a servitude or easement in the property granted, for the benefit of the other land owned by the grantor, and originally forming, with the land conveyed, one parcel, such right shall be deemed appurtenant to the land of the grantor...." (quoting *Whitney v. Union Ry. Co.,* 77 Mass. 359, 11 Gray 359, 365 (1858))). Thus, that ARC did not hold title to Lot 19, or the five-foot wide half of the Strip abutting Lot 19, at the time of the 1928 and 1931 conveyances to Mohler is of no import in determin-

the original portions of the Strip located on Lots 20 and 21, however, the relevant conveyance is the 1931 deed.[22] *See* Restatement (Third) of Property: Servitudes § 7.5 (noting that revival of an easement extinguished by merger may be accomplished only by recreation of the easement). Therefore, we consider the sufficiency of each of these deeds in establishing an implied easement by reference to a plat.

## II. Sufficiency of the Deeds to Create an Implied Easement by Reference to a Plat

### A. Reference to the Plat

As we noted in *Boucher*, "[a]n obvious but important factor in determining whether [an easement by plat reference exists] is whether [the] deed [purportedly creating the easement] contains a reference to a plat that contains a right of way." 301 Md. at 688–89, 484 A.2d at 635. In *Boucher*, we implied an easement by plat reference where the deed in question, executed by the grantor who created the plat, referred expressly to the plat depicting allegedly a right of way "as a means of describing the boundaries of [the] property." *Id.* at 691, 484 A.2d at 635. Indeed, where implied easements by plat reference have been found in Maryland appellate cases, it is noted frequently that an express reference to the plat depicting the alleged easement is contained in the relevant deed. *See, e.g., Kobrine*, 380 Md. at 638, 846 A.2d at 413 (noting that the deeds to the individual landowners included references to the relevant plats); *Koch*, 357 Md. at 196, 742 A.2d at 947 (noting that "[a]ll of the deeds refer to

---

ing whether an easement in favor of Lot 18 was created nonetheless over that portion of the Strip.

**22.** Because Lot 18 was conveyed twice from the original common grantor and Petitioners do not argue that the 1931 conveyance is irrelevant because it was not the original conveyance of the property after the filing of the plat, we assume, without deciding, that ARC's second conveyance of Lot 18 may create an easement by reference to a plat. *See generally Olde Severna Park Improvement Ass'n, Inc. v. Barry*, 188 Md.App. 582, 626, 982 A.2d 905, 931 (2009) (noting that, in implying an easement by reference to a plat, the court is concerned with the intent only of the original grantor).

'the unrecorded plat of Lerch's Point' "); *see also Gunby v. Olde Severna Park Improvement Ass'n, Inc.,* 174 Md.App. 189, 200, 921 A.2d 292, 299 (2007) (noting that the relevant deed described the property, in pertinent part, as that "shown on Plat # 2, Severna Park, Jacob Mittnacht Tract, surveyed by J. Revell Carr, April, 1931, recorded among the Plat Records of Anne Arundel County").

In the present case, there is no question that the reference in the 1928 deed to the Plat is sufficient to satisfy this requirement under *Boucher.* The 1928 deed refers to the property depicted on the Plat in the following manner: "Lot numbered Eighteen (18) of Section "D" in the development known as "Annapolis Roads", as designated on the plat of said Annapolis Roads made by Olmsted Brothers, which said plat is recorded among the Land Records of Anne Arundel County. . . . " This express reference to the Plat is plainly sufficient to demonstrate the grantor's intention that the Plat be incorporated by reference, and indeed, Petitioners appear to concede that the 1928 deed refers effectively to the Plat.

The 1931 deed does not refer to the Plat so explicitly, however. Rather, the only reference in the deed is to the "Annapolis Roads development," as well as the following description of the property: "Lot eighteen (18) in Section 'D' ". Petitioners contend that this reference is insufficient to create an implied easement by plat reference because it does not refer expressly and sufficiently to the Plat. Moreover, Petitioners argue, ARC "knew perfectly well" how to convey lots by reference to the Plat, as demonstrated by, for example, the 1928 conveyance of Lot 18 to Mohler and the 1928 conveyance of Lot 19 to The Homes Improvement Company.

In considering this contention, the Court of Special Appeals concluded that, "[d]espite lack of use of the term 'plat' or the liber and folio for the 1928 Plat," the description was sufficient to imply an easement by reference because it referred to identifying characteristics of the lot that would not have existed absent the filing of the 1928 Plat. 205 Md.App. at 326, 45 A.3d at 782–83. Specifically, the court noted that the 1928

Plat (1) established as the name of the development as "Annapolis Roads"; (2) created Section D; and (3) created the lot known as Lot 18 within Section D. *Id.* at 326, 45 A.3d at 782. Thus, the court reasoned, "although the 1928 Plat is not specifically mentioned by name in the second conveyance to Mohler, the conveyance refers to the 1928 Plat in three other specific ways" that, in combination with the chain of title, are sufficient to constitute a specific plat reference.[23] *Id.* at 326–27, 45 A.3d at 783.

 To re-establish an easement extinguished by merger, the grantor must recreate the easement as if for the first time. Thus, although the chain of title might be relevant in linking the relevant language, such as "Lot D," to the 1928 Plat, it is not relevant independently in establishing the existence of the easement. Rather, we must determine whether the references to Lot D, Annapolis Roads, and Lot 18 are sufficiently specific to constitute an adequate reference to the Plat.

Although we acknowledge that the 1928 Plat created and defined the specific terms used in the 1931 deed, a comparison of the 1928 and 1931 deeds is instructive. In the 1928 deed, there is no question that the grantor intended to incorporate the Plat as part of the deed and, thus, any rights granted thereby. ARC included similar specific references to the Plat in multiple deeds, including a 1928 deed to The Homes Improvement Company, a 1932 deed to The Armstrong Company, and a 1932 deed to Helen Sagrario. Thus, as Petitioners note, ARC knew how to execute a deed referring expressly to the Plat, and had done so with respect to the initial convey-

---

**23.** It appears that the Court of Special Appeals interpreted Petitioners' argument that the re-conveyance of Lot 18 from Mohler to ARC extinguished the easement as, instead, an argument that the reference in the 1931 deed terminated the easement because it was insufficiently specific. *Annapolis Roads,* 205 Md.App. at 325, 45 A.3d at 782 ("Appellees contend that the second conveyance of Lot 18 to Mohler did not refer to the 1928 Plat and, therefore, any easement to use the Strip was extinguished at that time."). We do not interpret Petitioners' argument in that manner. Rather, it seems to us that Petitioners contend that the easement was extinguished by virtue of the reconveyance to ARC in 1929, and not by virtue of the 1931 deed.

ance of each lot. The 1931 deed, however, in contrast to the 1928 deed, does not refer facially to the Plat. The 1931 deed does not refer to the makers of the Plat, the location of the Plat's recordation, or the Plat itself, but instead recites terms defined originally in the Plat. Thus, to read the 1931 deed as incorporating the Plat by reference, the Court of Special Appeals relied on inference to equate the use of three terms with an unequivocal intention on the part of the grantor to incorporate the Plat.

As this Court noted, purported implied grants of easements are construed strictly. *See Buckler v. Davis Sand & Gravel Corp.*, 221 Md. 532, 538, 158 A.2d 319, 323 (1960); *Condry v. Laurie*, 184 Md. 317, 321, 41 A.2d 66, 68 (1945) ("[G]rants of easements by implication are looked upon with jealousy and are construed with strictness by the courts."). Thus, we have implied generally easements only when it was clear that the grantor incorporated a plat. *See generally Koch*, 357 Md. at 196, 742 A.2d at 947 (noting that "[a]ll of the deeds refer to 'the unrecorded plat of Lerch's Point' "). Because ARC conveyed repeatedly properties in the Annapolis Roads subdivision by Plat reference, we cannot ignore or even minimize the notable absence of such a specific reference with respect to the 1931 deed. The free-floating references to the terms defined in the Plat, without more, are not sufficient under our cases to imply an intention on the part of the grantor that the grantee have the right to use and enjoy the land of another. We hold that the references in the 1931 deed are not sufficient to establish that the grantor intended to incorporate the Plat into the deed. Thus, the Samorajcyzks do not have an easement by plat reference over the five-foot wide portion of the Strip abutting Lots 20 and 21.

### B. Does the Plat Depict a Right of Way?

Petitioners argue that, regardless of whether the 1928 and the 1931 deeds referred sufficiently to the 1928 Plat, the lack of a legend on the 1928 Plat specifying that the Strip was intended to constitute a right of way renders both deeds insufficient to create an implied easement. Specifically, Peti-

tioners contend that the 1928 Plat does not "contain[ ] a right of way" as required by *Boucher. See* 301 Md. at 688–89, 484 A.2d at 635 ("An obvious but important factor in determining whether [a party can establish an implied easement by plat reference] is whether their deed contains a reference to a plat *that contains a right of way.*" (emphasis added)). Rather, the Plat is "wholly and completely silent as to the creation of an easement on the Strip," and "does not state that the Strip is a street or that it is dedicated to public use." Petitioners argue that merely because "an analysis of the Plat might lead to the conclusion that the purpose of the Strip must have been to provide access to a street for Lot 18," it does not necessary follow that "the Plat itself creates an easement." Thus, because the Plat fails to specify facially the purpose of the Strip, Petitioners contend that it does not create an easement or any appurtenant rights.

By contrast, the Court of Special Appeals determined that the absence of a legend on the Plat was insufficient to establish "that the parties did not intend to convey an easement." *Annapolis Roads,* 205 Md.App. at 329, 45 A.3d at 785. Relying on *Klein v. Dove,* 205 Md. 285, 107 A.2d 82 (1954), in which we found an implied easement by reference to a plat over an unmarked roadway and a community beach, *id.* at 291, 107 A.2d at 85, the court determined that, because the plat depicts what appears to be a right of way, it demonstrates effectively "an intention to convey an easement." *Annapolis Roads,* 205 Md.App. at 329–30, 45 A.3d at 784–85.

This court held for quite some time that, "when a property owner subdivides property and makes or adopts a plat designating lots as bordering streets, and then sells any of those lots with reference to the plat, an implied easement of way passes ... over the street contiguous to the property sold." *Kobrine,* 380 Md. at 639, 846 A.2d at 414 (internal quotation marks and citations omitted). Because the Strip is contiguous to Lot 18, if the Strip is a "street," as that term has been considered by this Court in its cases, an easement was created by virtue of the Plat reference in the 1928 deed. The Court of Special Appeals, in considering whether the Strip constituted

a roadway and was thus reserved expressly by ARC in the relevant conveyances, determined that it was not a road, but instead a "shared driveway." *Annapolis Roads,* 205 Md.App. at 300–02, 45 A.3d at 767–68. The court determined that the Strip was a street for purposes of § 2–114 of the Real Property Article of the Maryland Code,[24] however, such that it "was a part of the lots binding it, and when lots were conveyed, the portion of the Strip binding the lots was also conveyed." *Annapolis Roads,* 205 Md.App. at 301–02, 45 A.3d at 768.

Upon examination of the Plat, we agree with the intermediate appellate court that the Strip is a "street" within the meaning of the rule iterated by this Court in *Kobrine.* It cannot be disputed seriously that, on its face, the Plat suggests that the Strip was intended to be used jointly by the lots abutting it.[25] To be sure, the presence of a legend on the 1928 Plat would have demonstrated more clearly ARC's intention to convey easement rights over the Strip. *See, e.g., Kobrine,* 380 Md. at 636, 846 A.2d at 412 (considering the legend depicted on the Plat in determining the existence of an easement). The Plat's failure to include one, however, does not render the Plat inadequate for the purpose of establishing an easement in the Strip.

---

**24.** The court considered both § 2–114 of the Real Property Article, as well as Maryland Code, Art. 21 § 5–114 (1957, 1973 Repl.Vol.) in reaching this conclusion. As noted in *Boucher,* Art. 21 § 5–114 "extend[ed] the common law presumption that title to the center of a binding street passes to the grantee." 301 Md. at 687, 484 A.2d at 633. The statute was recodified in 1974 at § 2–114 of the Real Property Article.

**25.** Moreover, Petitioners argued before the Court of Special Appeals that the Strip constituted a "street" or "shared driveway" for purposes of title. Thus, it seems consistent with Petitioners' argument in the intermediate appellate court to determine that the Strip was intended plainly to be used jointly. Indeed, as noted in *Boucher,* the purpose of former Article 21 § 5–114 (now codified as amended at Md.Code Ann., Real Property Art. § 2–114) is to "assure landowners that they will have access to streets bounding on their land by granting to them title to the center line of the street *while recognizing an easement in the other half of the street.*" 301 Md. at 693, 484 A.2d at 638 (emphasis added).

We have looked beyond the face of a plat legend previously to determine the existence of easement rights over streets or roadways not labeled as such on the plat. For example, in *Klein v. Dove*, 205 Md. 285, 107 A.2d 82 (1954), we considered whether a "scantily marked" plat depicting a ten-foot road or right of way leading to a beach area was intended to grant community access to the beach area. We noted that the plat did not designate what were "evidently streets, roads or ways . . . as such," although "[a]n examination of the plat show[ed] that they could not sensibly be regarded as anything else." *Id.* at 291, 107 A.2d at 85. Moreover, despite the lack of a legend designating the beach as a community area, we determined that there was otherwise "no readily perceptible reason for the ten-foot right of way between what appears to be the main road of the development and the lake area," except to provide residents with access to the beach.[26] *Id.* We looked beyond the legend, in a common sense reading of the plat, to determine the grantor's intentions.[27] In *Kobrine*, we examined a plat containing an ambiguous legend to determine whether the common grantor intended to reserve a lot for common use. In considering whether an implied easement by

---

**26.** We noted also that the plaintiffs in *Klein* relied presumptively on the plat depicting water rights in purchasing lots in the waterfront community. *Id.* We have implied easements by plat reference since without requiring plaintiffs to rely on the rights created allegedly by the plats. *See, e.g., Kobrine*, 380 Md. at 646, 846 A.2d at 419 (Harrell, J., concurring and dissenting in part) (criticizing the majority opinion for recognizing "an implied easement where the moving litigant did not rely on—much less read—the documents creating the general scheme upon which the alleged implied easement . . . is based"). The Annapolis Roads community in the present case is also a waterfront community, although we are not faced with the specific issue of water access rights.

**27.** Petitioners imagine that our decision in *Klein* rested, at least in part, on the legend depicted on the plat, providing that the roads were reserved by the owner "for the exclusive and mutual use and benefit of the owners of the lots abutting on said Streets and Roads." 205 Md. at 289, 107 A.2d at 84. Although the legend may have aided the Court in determining that the ten-foot road was intended for use by abutting landowners, the legend did not specify what community rights, if any, existed in the beach area.

plat reference existed, we had recourse to extrinsic factors and surrounding circumstances in aid of determining the grantor's intent. *Kobrine,* 380 Md. at 638–39, 846 A.2d at 414. This approach is consistent entirely with *Boucher,* in which we observed that "[a]n implied easement is based on the presumed intention of the parties at the time of the grant or reservation as disclosed from the surrounding circumstances...." 301 Md. at 688, 484 A.2d at 635.

Here, an examination of the Strip depicted on the Plat, although not labeled there as a street or way, reveals, as in *Klein,* that it could not be regarded reasonably as anything else. It is evident from the face of the 1928 Plat that the common grantor intended that the owners of Lots 18, 19, 20, and 21 have access to use and enjoy the Strip. Indeed, Petitioners admit that the apparent purpose of the Strip was to provide access to Carrollton Road.[28] The plat depicts the Strip clearly as open to, and an extension of, Carrollton Road. Moreover, the Court of Special Appeals characterized the Strip as a "shared driveway," *Annapolis Roads,* 205 Md.App. at 300–02, 45 A.3d at 767–68, thus suggesting an original intention to dedicate its use to more than one landowner. Merely because an easement could have been created in an alternative, less permanent manner does not render the depiction of the Strip on the Plat incapable of creating an easement, or the intentions of the parties insufficient or too obscure to do so. We do not think that the questions raised by Petitioners as to the Plat's depiction of a right of way are sufficient to rebut the presumption that the plat incorporates easement rights. Thus, we conclude that the depiction of the Strip on the Plat is sufficient to convey a right of way. The Samorajcyzks have an easement over the five-foot wide portion of the Strip abutting Lot 19.

---

**28.** Petitioners contend, however, that the obvious purpose of the Strip supports an intention to create an easement by necessity (which, they claim, has since terminated), not an implied easement by plat reference.

### III. Did the Lot Mergers of the Samorajcyzk Property Extinguish the Easement?

Petitioners assert that any implied easement created by reference to the Plat must be extinguished, because, due to the lot merger agreement executed by the Samorajcyzks in 2007, pursuant to Anne Arundel County Code §§ 18–4–203–04, effectively Lot 18 exists no longer. Upon review of the record, however, it does not appear that Petitioners mounted this argument before the Circuit Court. Although they alluded to the lot merger agreement and the merger provisions of the Anne Arundel County Code, Petitioners did not advance that the easement must be extinguished necessarily because Lot 18 has no continuing legal significance. Rather, Petitioners' argument with respect to the lot merger agreement in the trial court was limited to their contention that the lot merger agreement extinguished any still-remaining easement by necessity for the benefit of Lot 18 by virtue of providing the Samorajcyzks with access to Carrollton Road via the now-merged portion of Lot 15. Petitioners did not argue that the lot merger agreement extinguished effectively an easement implied by reference to the Plat because Lot 18 no longer existed legally.

Because Petitioners failed to preserve this argument for appellate review, we do not consider Petitioners' contentions on this point. *See* Md. Rule 8–131(a) ("Ordinarily, the appellate court will not decide . . . [an] issue unless it plainly appears by the record to have been raised in or decided by the trial court . . ."). We note, however, that the easement held by the owners of Lot 18 may be used only to benefit Lot 18. *See, e.g., Buckler v. Davis Sand & Gravel Corp.*, 221 Md. 532, 538, 158 A.2d 319, 323 (1960) (noting that an "easement cannot be extended by the owner of the dominant estate to accommodate land which he did not own when the easement was acquired"). Thus, to the extent that improvements to the Samorajcyzk property exist only on portions of the original Lots 15, 16, and 17, the easement may not be used to benefit those improvements. The easement, as such, runs to the benefit of Lot 18 only.

304

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND REMAND THE CASE FURTHER TO THE CIRCUIT COURT FOR ENTRY OF A DECLARATORY JUDGMENT NOT INCONSISTENT WITH THIS OPINION. COSTS IN THIS COURT TO BE PAID BY PETITIONERS.

ANNAPOLIS ROADS
PLAT A
ANNE ARUNDEL CO MD

Appendix "A"

Appendix "B"